No. 88-141

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

ROBERT SHIPLET and JACQUELINE
SHIPLET,

        Plaintiffs and Appellants,

    -vs-

FIRST SECURITY BANK OF LIVINGSTON, INC.,
a Montana corporation,

        Defendant and Respondent.

---

APPEAL FROM:  District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable Thomas Honzel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Terry Schaplow; Morrow, Sedivy & Bennett, Bozeman,
Montana

    For Respondent:

        Joe Swindlehurst; Huppert & Swindlehurst, Livingston,
Montana
Sid Thomas; Moulton Law Firm, Billings, Montana

---

Submitted on Briefs:  Aug. 11, 1988

Decided:  September 27, 1988

Filed SEP 2 7 1988

_____
Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

Robert and Jacqueline Shiplet (Shiplets) appeal from the order of the District Court of the Sixth Judicial District, Park County, granting summary judgment in favor of First Security Bank of Livingston (Bank). We affirm.

The Shiplets present one issue for review:

Did the District Court err in granting the Bank summary judgment on all counts of the complaint?

A complete statement of the facts would be very lengthy. However, an outline of relevant events will provide sufficient background and more detail will be given where required. The Shiplets operate a ranch south of Livingston. They have done business with the Bank for a number of years, entering into various loan agreements in the course of their ranching operations. In 1978, the Shiplets sought further financing for their ranch from the Bank in the form of a $350,000 loan.

The Bank indicated that it could not make the loan unless a guaranty could be arranged through the Farmers Home Administration (FmHA). The Bank then submitted a Request for Guarantee [sic] to FmHA, which listed a "Line of Credit Ceiling" of $350,000, an interest rate of 10%, and a term of five years. The Contract of Guarantee [sic] issued by FmHA upon its approval of the application listed no terms particular to the Shiplets' loan other than the $350,000 credit ceiling.

Once the guaranty was obtained, the Bank and the Shiplets executed a one-year promissory note for $350,000 at an interest rate of 10%. The Shiplets were not able to repay the total principal and interest due after one year, and in

2

1979 they executed a new one-year note. This began a cycle of notes, most of which were issued for six-month terms. The principal and interest still outstanding as each note came due were carried over to the new note.

When the 1978 note came due and it appeared that another note would be necessary, the Bank contacted FmHA and asked whether the terms of the guaranty would prohibit the Bank from raising the rate of interest on the loan to reflect the overall rise in interest rates taking place at that time. The FmHA replied that according to its attorneys, such a rate increase was permissible. The 1979 note carried an interest rate of 11.75%. The interest rate on subsequent notes fluctuated as the prime lending rate rose and fell, reaching a peak of 21½% in 1981.

The FmHA guaranty expired in 1984, at which time payments from the Shiplets on their loan were in arrears. The FmHA decided that the Bank would have to continue the Shiplets' loan without a guaranty or present a plan of liquidation. In February of that year, the Shiplets and their attorney began meeting with Bank officials to determine what could be done to resolve the situation. Negotiations resulted in execution of a $400,000 note and a new, seven-year FmHA guaranty. The conditions attached to the new guaranty included complete repayment of interest and operating credit at the end of each year, and liquidation of some Shiplet real estate holdings in order to repay $338,000 of the loan. When this final note reached maturity on September 28, 1985, approximately $348,000 remained outstanding.

In October of 1985, the Shiplets filed suit against the Bank based on the increased interest charged on the post-1978 notes. They alleged breach of contract, breach of third-party-beneficiary contract, bad faith, fraud, negligent

3

infliction of emotional distress, breach of fiduciary duty and economic duress. On January 21, 1988, the District Court issued an order granting the Bank's motion for summary judgment as to all thirteen counts enumerated in the Shiplets' complaint. This appeal followed.

In order for summary judgment to issue, the moving party must show there is no genuine issue as to facts that are material in light of the substantive principles entitling that party to judgment as a matter of law. If the moving party meets this burden, the non-moving party then has the burden of showing a genuine issue of material fact. These standards also apply to this Court when reviewing the grant or denial of summary judgment. Frigon v. Morrison-Maierle, Inc. (Mont. 1988) ___ P.2d ___, 45 St.Rep. 1344, and cases cited therein.

I.

The first count of the Shiplets' complaint alleged breach of contract. They argued the Bank represented to them that the application form for the guaranty was a contract between the Bank and the Shiplets for a five-year loan at an annual interest rate of 10%. Shiplets alleged the Bank breached this contract by raising the rate of interest charged on the loan above 10%.

The District Court held this count failed for a number of reasons, including the application was not a contract between the Bank and the Shiplets. The court ruled the contract between the two parties was evidenced by the 1978 promissory note for a term of one year at 10%, and any oral representations made by the Bank prior to the signing of that note merged with the note's terms.

On appeal, the Shiplets direct two arguments at the District Court's holding. First, they argue Weinberg v. Farmers State Bank of Worden (Mont. 1988), 752 P.2d 719, 45

4

St.Rep. 391, is controlling in this case. According to the Shiplets, this Court held in Weinberg such a contract existed in a fact situation very similar to this case. In Weinberg, the farm operators alleged a seven-year loan agreement at an interest rate of 9½%. However, in that case both parties had signed a promissory note which on its face listed a seven-year term and a 9½% interest rate.

The only writing in this case containing the terms alleged by the Shiplets is the application for guaranty. That document was signed only by the Bank's agent, and was directed to the FmHA. The FmHA and the Bank later executed a separate contract of guaranty once the application had been approved. The application was not a contract between the Bank and the Shiplets.

As to any oral representations by the Bank that the application was in fact a contract, the District Court quoted language from our decision in First National Montana Bank of Missoula v. McGuiness (Mont. 1985), 705 P.2d 579, 42 St.Rep. 1288:

> [E]vidence of prior oral agreements is not admissible for the purpose of altering subsequent written agreements dealing with the same subject, and that the prior oral agreements and the written agreement will merge into the subsequent written agreement unless they are distinct and can stand independently of one another.

705 P.2d at 584. Under the doctrine of merger as enunciated in McGuiness, any oral representations made by the Bank merged with the terms of the note, which then represented the contract reached between these two parties.

The Shiplets second argument is that an exception to the doctrine of merger exists for evidence of an oral agreement introduced in order to establish fraud. As will be discussed more fully below, any such evidence would be barred by the

5

two-year statute of limitations for fraud-related torts found at § 27-2-203, MCA. The District Court was correct in granting summary judgment on this count.

## II.

The Shiplets' second count alleged breach of a third-party-beneficiary contract. They argued they are third-party beneficiaries of the guaranty contract between the Bank and the FmHA. On appeal, the Shiplets argue Weinberg is controlling on this issue as well. They assert this Court found a third-party-beneficiary contract in Weinberg, rejecting the argument that the guaranty contract was strictly between the bank and the FmHA. Again, the distinguishing factor of the promissory note in Weinberg is overlooked in the Shiplets' argument.

In Weinberg, the guaranty contract was not held to be a third-party-beneficiary contract as such. The bank in that case argued under the parol evidence rule found at § 28-2-905, MCA, the note was evidence only of the initial advances made to the Weinbergs, which had been repaid. The Weinbergs alleged the note was evidence of an agreement for a line of credit lasting seven years. We held the parol evidence rule did not apply, because the Weinbergs were not attempting to vary the terms of the note. They were instead basing their argument on terms found on the note's face. We therefore applied § 28-3-402, MCA, which allows evidence of the circumstances under which an agreement is made in order to explain, but not modify, its terms.

The guaranty contract in Weinberg was one piece of evidence showing the circumstances surrounding the execution of the note. The documents used in procuring the guaranty and the bank's subsequent actions in reliance on the guaranty contract all pertained to what the bank and the Weinbergs had in mind when they executed the note.

6

Unlike Weinberg, the Shiplets are not seeking to enforce the terms of their note with the Bank. Instead, they seek to enforce the guaranty contract itself. The District Court's citation to the South Dakota Supreme Court decision in Swier v. Norwest Bank (S.D. 1987), 409 N.W.2d 121, is persuasive. The loan in that case was an FmHA emergency livestock loan, the same kind of loan involved in this case. Such loans are governed by regulations found at 7 CFR §§ 1980.201 et seq, which do not prohibit a bank from raising the interest rate charged on a loan during the life of the guaranty. Before raising the rate it charged the Shiplets, the Bank contacted the FmHA to find out if this would violate the guaranty contract, and was told correctly that it would not. The District Court was correct in granting summary judgment on this count.

## III.

The third count of the Shiplets' complaint alleged breach of the statutory obligation of good faith found in the Uniform Commercial Code as adopted in Montana. Section 30-1-203, MCA, states, "[e]very contract or duty within this code imposes an obligation of good faith," and § 30-1-202(19), MCA, states that "good faith" means honesty in fact. The Shiplets' argument on appeal states basically that there is ample evidence of dishonesty in a number of representations made to them by the Bank's agent. While it appears from our review of the record that the Shiplets experienced difficulties in dealing with the Bank, the evidence before us does not support a violation of statutory good faith.

Montana case law on this subject is scarce. However, because the statutory provisions cited above are part of the Uniform Commercial Code, we are afforded the opportunity to look to decisions in other states interpreting virtually

7

identical provisions. From our reading of cases such as Third National Bank in Nashville v. Hardi-Gardens Supply of Illinois, Inc. (M.D. Tenn. 1974), 380 F.Supp. 930; and First Bank of Savannah v. Kilpatrick-Smith Construction Co., Inc. (Ga. 1980), 264 S.E.2d 576, it appears the gravamen of the statutory good faith requirement is whether the terms of the agreement were carried out faithfully.

Our review of the record before us shows the various notes evidencing agreement between the Bank and the Shiplets were in fact carried out by the Bank. The monies agreed upon were advanced at the rates agreed upon in writing by both parties. Statements made by the Bank's agent, while not always strictly forthright, did not deprive Shiplets of the benefit of the bargains they struck with the Bank. The District Court was correct in granting summary judgment on this count.

## IV.

The Shiplets' fourth count alleged breach of the implied covenant of good faith and fair dealing. The District Court's ruling cited authority from this Court requiring that a breach of contract must be the result of some "impermissible activity" before the breaching party can be held to have also breached the implied covenant of good faith and fair dealing. See, Noonan v. First Bank Butte (Mont. 1987), 740 P.2d 631, 44 St.Rep. 1124; Nordlund v. School District No. 14 (Mont. 1987), 738 P.2d 1299, 44 St.Rep. 1183; Nicholson v. United Pacific Insurance Co. (Mont. 1985), 710 P.2d 1342, 42 St.Rep. 1822.

The Shiplets seek to distinguish this authority by noting in Nicholson we held a breach of contract was not a prerequisite to breach of the covenant, because the implied covenant of good faith is not an obligation arising from the contract itself. Nicholson, 710 P.2d at 1348. While this is

8

true, we also stated the obligation imposed by the covenant is to act reasonably. Under this standard, we have held the "minimal requirement" for breach of the covenant is action by the defendant that is "arbitrary, capricious or unreasonable, and exceeded plaintiffs' justifiable expectation [that the defendant act reasonably]." Noonan, 740 P.2d at 635.

In this case, the Shiplets had a justifiable expectation that the Bank would act reasonably by loaning them money on the terms agreed upon in the notes. As we found above, this was done. The evidence adduced by the Shiplets fails to show arbitrary or unreasonable conduct by the Bank. The District Court was correct in granting summary judgment.

V.

Counts five through nine of the complaint alleged various forms of fraud and fraud-related torts. The District Court ruled these claims were barred by Montana's two-year statute of limitations for actions based on fraud or mistake found at § 27-2-203, MCA. On appeal, the Shiplets contend they had developed a confidential relationship with the Bank similar to that found by this Court in Weinberg, which tolled the statute of limitations.

The existence of a confidential relationship, however, is not an issue here. The authority cited by Shiplets for the proposition that the statute was tolled in this case is 37 Am Jur 2d Fraud and Deceit § 409:

> Where a confidential relationship exists between the parties, failure to discover facts constituting fraud may be excused.

The basis of the Shiplets' complaint is that the Bank represented to them it would loan them money at a rate of 10% over a period of five years, and then did not do so. In January of 1978, the Shiplets signed a note that did not

9

contain the alleged five-year term. In January of 1979, they signed a note that contained neither the alleged term, nor the alleged interest rate. They had at that point certainly discovered facts sufficient to constitute fraud. There was no failure to discover facts, and therefore no need for a confidential relationship argument. The District Court's ruling was correct.

## VI.

The Shiplets' tenth count alleged negligent infliction of emotional distress. Negligent infliction of emotional distress is a narrowly-defined tort in Montana. We set out the test for this tort in Versland v. Caron Transport (1983), 206 Mont. 313, 671 P.2d 583, by requiring an emotional impact resulting from direct observance of the death or serious injury of a close relative. That situation clearly is not present here, and the count is therefore at least mislabeled.

The body of this count, and the Shiplets' subsequent arguments to the District Court and this Court, use language adopted from our decision in Johnson v. Supersave Markets, Inc. (Mont. 1984), 686 P.2d 209, 41 St.Rep. 1495, concerning emotional distress as an element of damages resulting from a tort. We are here affirming the District Court's grant of summary judgment in favor of the Bank on all counts listed in the Shiplets' complaint. Therefore we need not reach the issue of damages.

## VII.

The eleventh count of the complaint alleged promissory note breach of contract. The Shiplets and the Bank allegedly agreed interest would be due at maturity, with all interim payments applied to principal. The Shiplets allege the Bank partially misapplied some interim payments to interest.

Both parties agree the District Court correctly stated the general rule that interim payments on a debt are normally

10

applied first to accrued interest. Shiplets argue, however, the testimony of the Bank's expert witness created a genuine issue of material fact as to a possible exception to the rule. The Bank's expert testified the provision that interest would be due at maturity meant, in his opinion, interim payments would be applied to principal. The Shiplets also point out that two of the notes state early payments would be applied to principal.

A recent statement of the general rule on application of interim payments is found at 45 Am Jur 2d Interest and Usury § 99. Known as the "United States Rule," it provides interim payments are first applied to accrued interest unless there is a statute or an agreement to the contrary. See, e.g., Shutts v. Phillips Petroleum Co. (Kan. 1987), 732 P.2d 1286. Neither exception is present in this case.

Lack of an agreement as to application of interim payments is evidenced by the Shiplets' own brief to this Court. They contend they have always asked that payments be applied first to principal, but the Bank's reply has been "they'd do whatever they want to with it." There is likewise no statute in Montana dictating application of interim payments to principal. Furthermore, the note language cited by the Shiplets stating early payments would be applied to principal was preceded by the caveat that such early payments would not relieve the debtor of the duty to continue making payments under the agreed payment schedule. This language therefore deals with payments made outside the normal course of the loan, not regular interim payments. The District Court was correct in granting summary judgment on this count.

## VIII.

Count twelve of the complaint alleged breach of fiduciary duty arising from the confidential relationship between the Shiplets and the Bank. On appeal, the Shiplets

11

again argue the situation here is analogous to that in Weinberg, where a confidential relationship was found. Shiplets also cite our decision in Deist v. Wachholz (Mont. 1984), 678 P.2d 188, 41 St.Rep. 286, for the proposition that a confidential relationship can exist between a bank and its customer in certain situations.

In Deist, we began with the general rule that a bank-customer relationship does not ordinarily give rise to fiduciary responsibilities. However, we found an exception to this general rule when special circumstances are present. In Deist, the plaintiff and her deceased husband had banked with the defendant for over 20 years. After the husband's death, the bank had taken an active advisory role in the plaintiff's finances, and she had relied on that advice. Deist, 678 P.2d at 193-94. Likewise in Weinberg, we found a confidential relationship where the bank "partcipated in and encouraged the changes to be made regarding the Weinbergs' farming operation." Weinberg, 752 P.2d at 731.

One telling factor distinguishes this case from Deist and Weinberg. The Shiplets did not place such great reliance on the Bank's advice. The Shiplets felt they knew more about ranching than did the Bank's agent. While the Bank advised the Shiplets on the operation of their ranch, that advice was not always heeded. For example, they refused to withdraw from the FmHA guaranty program when advised to do so in 1979, and even refused to sell land when required to do so by the conditions of the seven-year FmHA guaranty issued in 1984. Furthermore, they were represented by counsel during the 1984 negotiations.

No special circumstances are present in this case to create an exception to the general rule that a bank's relationship with its customer is not a confidential one.

The District Court was correct in granting summary judgment on this count.

## IX.

The Shiplets final count alleged Economic Duress, in that the Bank's agent threatened foreclosure when he had no legal right to do so. Shiplets advance this argument again on appeal, stating the Bank's unwarranted foreclosure threats destroyed their free agency and left them with no choice but to sign the notes. The Shiplets' argument on this count fails for much the same reason as their argument concerning breach of fiduciary duty. Economic duress, also known as "business compulsion," concerns the making of contracts under circumstances showing a lack of free will on the part of one of the contracting parties. However,

> [economic duress] is not established merely by proof that consent was secured by the pressure of financial circumstances, or by the fact that one party insisted upon a legal right and the other party yielded to such insistence.

25 Am Jur 2d Duress and Undue Influence § 7.

The record before us shows the notes at issue represented an indebtedness incurred at the request of the Shiplets. They were unable to repay even the first note completely, and with each new note, the indebtedness compounded. The Shiplets' claims that they had no choice but to sign these notes stem not from some unlawful threat by the Bank, but from the pressure of their mounting debt. True, had they not signed the notes, the Bank could have "put them out of business," but this would have been through foreclosure, the Bank's lawful remedy for failure of repayment. The District Court was correct in granting summary judgment on this count.

13

We affirm the order of the District Court.

_____
                                              Justice

We Concur:

_____
              Chief Justice

_____

_____

_____

_____

_____
                 Justices

14