No. 88-336

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

ED H. BLOME and SHIRLEY A. BLOME,

       Plaintiffs and Appellants,

  -vs-

FIRST NATIONAL BANK OF MILES CITY,

       Defendant and Respondent.

APPEAL FROM:  District Court of the Sixteenth Judicial District
In and for the County of Custer,
The Honorable Alfred B. Coate, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Michael P. Sand; Bozeman, Montana

    For Respondent:

        Thomas M. Monaghan, Lucas & Monaghan; Miles City, MT

Submitted on Briefs:  January 26, 1989

Decided:  July ]8, 1989

Filed:

_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

E. H. Blome and Shirley A. Blome appeal from a summary judgment granted against them in the District Court, Sixteenth Judicial District, Custer County, and in favor of First National Bank in Miles City. We determine that the record discloses no genuine issue of material fact so as preclude summary judgment and so affirm the District Court.

The issues on appeal as stated in the Blomes' brief are as follows:

1. Whether summary judgment is proper where the record discloses genuine issues of material fact and that the moving party is not entitled to judgment as a matter of law.

2. Whether the trier-of-fact could find that the Bank acted arbitrarily, unreasonably or capriciously and in violation of the Blomes' justifiable expectations that the Bank would loan them money for the purchase of feeder cattle and to pay on their Contract for Deed with Charles McRae and Jack Ross in December of 1982.

3. Whether the trier-of-fact could find that the Bank acted arbitrarily, unreasonably or capriciously and in violation of the Blomes' justifiable expectations by failing to give the Blomes reasonable notice that their credit was in jeopardy prior to December 23, 1982.

4. Whether the court could find that the Bank breached a contract with the Blomes when it refused to loan them money for the purchase of feeder cattle and to pay on the McRae/Ross contract in December of 1982.

5. Whether the trier-of-fact could find, assuming an absence of tortious bad faith or breach of contract, that the

Blomes relied, to their detriment, on a justifiable belief that the Bank had agreed to loan money for the purchase of feeder cattle and to pay on the McRae/Ross contract in December of 1982.

The Blomes, who had been successful farmers near Dillon, Montana, for a number of years, in 1981 sold their farm for $360,000. That summer the Blomes approached Charles McRae, co-owner of a farming and feedlot operation near Hysham, Montana, as interested buyers. Eventually the Blomes entered into a contract for deed to purchase for $1,100,000 from Charles McRae and Jack Ross, the ranching and feedlot operation at Hysham. The Blomes agreed to make and did make payments totalling $300,000 on the contract, and agreed to make annual payments of $77,872 beginning in January of 1983 until the amortized debt was paid.

Charles McRae was a director of the First National Bank in Miles City. He suggested to the Blomes that they deal with the Bank for their financing. Beginning on October 6, 1981, and ending on December 23, 1982, the Bank loaned the Blomes money on 27 occasions, each time evidencing the loans through promissory notes.

The memoranda appearing on the Bank records indicate the progress of the loan and the Blomes' new ranching operation. On March 17, 1982, the Bank learned that Ed Blome had made a crop sharing agreement on 330 acres of land with a neighboring owner. The Bank officers expressed some dismay that the agreement was made without their knowledge. Nonetheless, on July 21, 1982, their inspection report showed an excellent crop of corn being raised, with excess silage also on hand. On November 5, 1982, the Bank noted the purchase by the Blomes of a 1970 Peterbilt truck and a 1966 Wilson grain hopper at a total cost of $14,500. At this point the Bank expressed to Shirley Blome the displeasure of

the officers that these purchases had been made without consultation with the Bank.

The notation for December 23, 1982, showed that Ed Blome had approached the officers with a proposal to purchase 1,200 head of calves to utilize his existing silage. Since the finances would have to come from the Bank, the officers had presented the proposal to the Bank's loan committee. The loan committee had decided not to allow the loan request and to decline renewal of loans for the entire upcoming year. So it was that on November 23, 1982, the Blomes were advised orally that the Bank would no longer be financing Blomes' operations. At that time their outstanding debt to the Bank amounted to $372,131.24.

Because of the Bank's withdrawal of support, the Blomes were unable to meet the January, 1983, payment on their contract for purchase with Charles McRae and Jack Ross. The default resulted in a complete loss of the Blomes' investment in the ranch operation.

The Bank did not commence foreclosure until after the 1983 harvest, apparently with the consent and cooperation of the Blomes who aided the Bank in disposing of the various items of property and crops so that the debt as of the time of foreclosure had been reduced to $64,899.45 on November 29, 1983. There is a notation in the Bank records that the cooperation of the Blomes helped Charles McRae, the Bank director, who would otherwise have had to farm the unit and who was in no position to do the farming.

The Blomes filed their complaint against the Bank in the Yellowstone County District Court on October 15, 1986. A change of venue to the District Court of the Sixteenth Judicial District for Custer County was eventually granted. On December 23, 1987, First Bank moved for summary judgment

- 4 -

which the District Court granted on May 12, 1988. This appeal followed.

This case is similar to, and in many respects controlled by our decision in Shiplet v. First Security Bank of Livingston (1988), ___ Mont. ___, 762 P.2d 242. There, with respect to the appropriate standard of review we stated:

> In order for summary judgment to issue, the moving party must show there is no genuine issue as to facts that are material in the light of the substantive principles entitling that party to judgment as a matter of law. If the moving party meets this burden, the non-moving party then has the burden of showing a genuine issue of material fact. These standards also apply to this Court when reviewing the grant or denial of summary judgment. Frigon v. Morrison Maierle, Inc. (Mont. 1988), 760 P.2d 57, 45 St.Rep. 1344, and cases cited therein.

762 P.2d at 244.

The issues presented for review by the Blomes which we have quoted above, can be boiled down to these essential questions:

(1) Was there ever an expressed or implied contract on the part of the Bank to continue to loan the Blomes money for their ranching operation, and to pay on their contract for deed with Charles McRae and Jack Ross?

(2) Was there an implied covenant of good faith and fair dealing between the Blomes and the Bank which the Bank breached?

(3) Did the Bank give reasonable notice of intention not to renew credit for the Blomes after December 23, 1982. (Arbitrary and capricious issue)?

DID AN EXPRESS OR IMPLIED CONTRACT EXIST?

This caption subsumes issues 4 and 5 first above noted as presented by the Blomes for review.

Blomes contended there was an agreement by the Bank to provide the Blomes financing for their operation as long as they needed it with repayment to be made when they were able to with respect to the operation of the ranch and the payments on the contract for deed.

Totally lacking before the District Court and here is any evidence of facts upon which an express contract could be based. The loans by the Bank were evidenced by promissory notes signed by the Blomes; the memoranda in the Bank records are simply journal reports of the progress of the ranching operations and the prospects of payment for the loans; no oral representations by any bank officers may be found which would bind the Bank to perform as the Blomes contend. In other words in this case there can be no express contract upon which the Blomes can base a cause of action.

The same problem attends the contention of the Blomes that there was an implied contract between them and the Bank. Under § 28-2-103, MCA, an implied contract is one the existence and terms of which are manifested by conduct. The evidence here is that from the time the Blomes entered into financing arrangements with the Bank, until the arrangements were terminated on December 23, 1982, their relationship was one of an ordinary bank-customer. Each time the Blomes needed financing, the Bank reviewed their progress, determined their financing needs, and in accordance therewith issued loans based on promissory notes on a short term basis. Nothing in the evidence suggests anything more than a day-to-day or month-to-month financing arrangement, based upon a review of the financial condition of the borrowers at the time the notes were executed and delivered. Particularly, there is no indication in the Bank memoranda or any oral evidence that the Bank did not expect the notes to be paid when due nor any agreement outside the notes for loans to the

- 6 -

Blomes when they needed them, and without regard to the necessity of repayment.

Moreover, the claimed existence of an implied contract between the parties runs into legal questions which cannot be answered here on the facts. First, an implied contract the performance of which exceeded one year would run afoul of the statute of frauds, § 28-2-903, MCA. Secondly, the language of the notes in each case is clear and explicit as to due dates and payment. The claimed implied contract would have the effect of varying the terms of written instruments. So we said in Shiplet, supra:

> As to any oral representations by the Bank that the application was in fact a contract, the District Court quoted language from our decision in First National Montana Bank of Missoula v. McGuiness (Mont. 1985), 705 P.2d 579, 42 St.Rep. 288:
>
> > [E]vidence of prior oral agreements is not admissible for the purpose of altering subsequent written agreements dealing with the same subjects, and that the prior oral agreements and the written agreement will merge into the subsequent written agreement unless they are distinct and can stand independently of one another. 705 P.2d at 584.
>
> Under the doctrine of merger as enunciated in McGuiness, any oral representations made by the Bank merged with the terms of the note, which then represented the contract reached between these two parties.

762 P.2d at 245.

As a matter of law therefore, neither an express nor implied contract, nor evidence tending to support the same, was presented to the District Court so as to preclude summary judgment. We find no error on these issues.

DID THE BANK BREACH AN IMPLIED COVENANT

- 7 -

OF GOOD FAITH AND FAIR DEALING?

Under the Uniform Commercial Code, every contract or duty within the code imposes an obligation of good faith in its performance or enforcement. Section 30-1-203, MCA. "Good faith" is defined in the code as "honesty in fact in the conduct or transaction concerned." Section 30-1-201(19), MCA.

The duty of good faith may not be disclaimed by agreement between the parties, though their agreement may determine the standards by which good faith is to be measured if the standards are not manifestly unreasonable. Section 30-1-102(3), MCA.

We may assume then that there did exist between the parties, mutually, and to each other, because the instruments involved here were related to the Uniform Commercial Code, a duty of good faith in their conduct or performance. This leads us to the next issue raised by the Blomes.

DID THE BANK GIVE REASONABLE NOTICE OF ITS INTENTION NOT TO RENEW ITS FINANCING TO THE BLOMES OR OTHERWISE ACT ARBITRARILY OR CAPRICIOUSLY?

This caption subsumes issues 2 and 3 first noted above by the Blomes as proper for review.

Essentially, the Blomes are claiming that the conduct of the Bank gave rise to their justifiable expectations that the Bank would continue to loan them money for the purchase of feeder cattle, and to pay on their contract for deed. Blomes further contend that they were entitled to reasonable notice that their credit was in jeopardy prior to December 23, 1982.

In Nicholson v. United Pacific Insurance Company (1985), ___ Mont. ___, 710 P.2d 1342, this Court took pains to "more fully articulate our conception of what has been termed loosely as 'bad faith,' but has termed more accurately as the

tort of breach of the implied covenant of good faith and fair dealing." There this Court stated:

> . . . [w]e agree with the statement in Quigley, supra, [Quigley v. Pet, Inc. (1984) 162 Cal.App.3rd 223, 208 Cal.Reptr. 394] that the tort resulting from this breach depends on some impermissible activity. The Montana cases discussed above focus on the action of the breaching party in the relationship to find a breach of the implied covenant, not just the existence of a breach of contract.
>
> . . .
>
> . . . But whether performing or breaching, each party has a justifiable expectation that the other party will act as a reasonable person (citing a case). The nature and extent of an implied covenant of good faith and fair dealing is measured in a particular contract by the justifiable expectations of the parties. Where one party acts arbitrarily, capriciously or unreasonably, that conduct exceeds the justifiable expectation of the second party. The second party then should be compensated for damages resulting from the other's culpable conduct.

Nicholson, 710 P.2d at 1348.

Clearly, under Nicholson, a breach of implied covenant of good faith and fair dealing requires the breaching party to conduct itself in an impermissible activity, and in so doing, to act arbitrarily or capriciously. In the case now before us, evidence of such a breach of implied covenant is totally lacking. Certainly the Bank here, analyzing the financial situation of the Blomes, had a right to terminate its financing as long as it did so reasonably and not capriciously. The Bank, from the evidence here, did act reasonably and not capriciously or arbitrarily. As to notice of its intention not to renew the financing, there is no common law or statutory duty to give notice. It further appears here that the Bank gave notice to the Blomes when

they applied to the Bank for additional financing to purchase a large herd of feeder cattle. The Bank officials decided that they had gone as far as they could and it was time to call a halt to their financing of the operation. That was a business decision made by the Bank which it fully had a right to make. Again, this point was covered in Shiplet, supra:

> The Shiplets' fourth count alleged breach of the implied covenant of good faith and fair dealing. The District Court's ruling cited authority from this Court requiring that a breach of contract must be a result of some "impermissible activity" before the breaching party can be held to have breached the implied covenant of good faith and fair dealing. (Citing cases.)
>
> The Shiplets seek to distinguish this authority by noting in Nicholson, we held a breach of contract was not a prerequisite to a breach of the covenant, because the implied covenant of good faith is not an obligation arising from the contract itself. Nicholson, 710 P.2d at 1348. While this is true, we also stated the obligation imposed by the covenant is to act reasonably. Under this standard, we have held the 'minimal requirement' for breach of the covenant is action by the defendant that is 'arbitrary, capricious or unreasonable, and exceeded plaintiffs' justifiable expectation [that the defendant act reasonably].' Noonan, 740 P.2d at 635.
>
> In this case the Shiplets had a justifiable expectation that the Bank would act reasonably by lending money on the terms agreed upon in the notes. As we found above, this was done. The evidence induced by the Shiplets fails to show arbitrary or unreasonable conduct by the Bank. The District Court was correct in granting summary judgment.

762 P.2d at 246.

CONCLUSION

The first issue presented by the Blomes for review is that summary judgment is not proper where the record discloses genuine issues of material fact. There simply is

- 10 -

no evidence adduced by the Blomes here that would indicate either an express or an implied contract, or a breach of the implied covenant of good faith imposed on transactions under the Uniform Commericial Code.  The plight of the Blomes in this case, who lost the entire proceeds of their former farming operation in Dillon, is regrettable, but it cannot be said in this case that the Bank is legally responsible for any of the losses sustained by the Blomes.  There is no genuine issue of material fact presented in this case, and the decision of the District Court to grant summary judgment in favor of the Bank is hereby affirmed.

_____
                                                    Justice

We Concur:

_____
Chief Justice


_____


_____
Justices

Mr. Justice L. C. Gulbrandson specially concurring.

I concur with the result of the foregoing opinion but not with all that is expressed therein.

_____
                                    Justice

- 11 -