NO. 93-150

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

JEROME J. CATE and the CATE LAW
FIRM, P.C.,

      Plaintiffs and Appellants

  -v-

FIRST BANK (N.A.) - BILLINGS,

      Defendant and Respondent.



FILED

DEC 16 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In. and for the County of Yellowstone,
The Honorable Maurice R. Colberg, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

         Robert L. Stephens, Jr., R.L. Stephens, P.C.,
Billings, Montana

      For Respondent:

         Gregory G. Murphy, Moulton, Bellingham, Longo &
Mather, Billings, Montana


Submitted on Briefs:  October 5, 1993

Decided:  December 16, 1993

Filed:

*[signature]*

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from the Thirteenth Judicial District Court, Yellowstone County, granting First Bank summary judgment on all issues. We affirm.

Appellant appeals the District Court's grant of summary judgment to First Bank. However, he only argues on appeal count five of his complaint that alleges a breach of the covenant of good faith and fair dealing. Therefore, we consider the following issues on appeal:

1. Did the District Court err in granting summary judgment to First Bank on the issue of breach of the covenant of good faith and fair dealing?

2. Did the District Court err in failing to grant Cate's cross-motion for summary judgment concerning alteration of records?

Jerome J. Cate (Cate) is a Billings attorney. In 1978, Cate left Billings to accept a position with the Attorney General's office. He returned to Billings five years later to once again establish his practice. Cate began to borrow money from First Bank in Billings (First Bank). Cate's initial loan was for $15,000 but within two years the balance owed had escalated to $127,691.

During February of 1985, Cate signed a final promissory note for the entire account balance payable in full by June 14, 1985. The loan was to be paid by funds gained from a successful court case. Sometime after the loan became past due, First Bank asked Cate for additional verification that the case would be over soon. The case was settled on September 17, 1985, and Cate paid the loan

in full.

In November of 1985, Cate's office manager asked First Bank whether it would lend the Cate firm additional funds. First Bank informed the office manager that it would not lend Cate any more money for the operation of his firm.

Two and one-half years later, on February 2, 1988, Cate brought a six count complaint against First Bank alleging: (1) breach of fiduciary duty: (2) breach of contract: (3) defamation of credit: (4) breach of statutory duty: (5) breach of the covenant of good faith and fair dealing; and (6) that the matters alleged in counts one through five constituted wanton and malicious acts entitling Cate to punitive damages. First Bank filed its answer on February 19, 1988.

On March 14, 1990, First Bank filed a motion for summary judgment. Several years passed with no action taken on the lawsuit and on March 24, 1992, First Bank again moved for summary judgment. Cate then filed a cross-motion for summary judgment in April of 1992, alleging that First Bank had altered his banking records, causing liability on the part of First Bank as a matter of law and that material issues existed precluding summary judgment.

The District Court issued its Order and Judgment on October 12, 1992. That order granted First Bank summary judgment on all issues. Cate appeals this order.

## I.

Did the District Court err in granting summary judgment to First Bank on the issue of breach of the covenant of good faith and

fair dealing?

Cate argues that First Bank breached its covenant of good faith and fair dealing by refusing to loan him additional money and by altering its own bank records to bolster its decision not to loan him such money. First Bank argues that once Cate paid the overdue $127,691 loan in full, it had no obligation to loan him additional funds. Further, contends First Bank, Cate presented no evidence to the District Court concerning record-tampering. First Bank argues that Cate never modified his initial complaint to add a charge having to do with alteration of records and that letters submitted on appeal from Cate's alleged expert cannot be considered because they are not part of the record.

The District Court determined that no contract existed between Cate and First Bank following Cate's payment of the overdue $127,691 loan. According to the court, First Bank was under no obligation to loan more money to Cate. Without a contract, the court determined that First Bank did not breach the covenant of good faith and fair dealing. The court determined that Cate had not supplied it with any evidence to substantiate his claims of alteration of bank records.

On review of a grant of summary judgment, we use the same standard as that of the District Court. We determine whether the moving party has presented evidence that no genuine issues of material fact exist and also whether the moving party is entitled to judgment as a matter of law. Rule 56(e), M.R.Civ.P.; McCracken v. City of Chinook (1990), 242 Mont. 21, 788 P.2d 892. Once this

4

burden has been satisfied, the non-moving party then has the subsequent burden to demonstrate the presence of a genuine issue as to some material fact. Peschel v. Jones (1988), 232 Mont. 516, 760 P.2d 51. The burden carried by the non-moving party must be met with some precision. Duensing v. Traveler's Companies (1993), 257 Mont. 376, 849 P.2d 203.

Here, First Bank presented evidence that it had satisfied its contract obligation to Cate and that Cate had paid the overdue loan. The record indicates that the contract between Cate and First Bank had been satisfied and that no subsequent contract had been entered into. First Bank presented adequate law to support its contention that it could not be guilty of a breach of the covenant of good faith and fair dealing because no subsequent contract existed between it and Cate. First Bank met its burden and, therefore, the burden shifted to Cate to provide evidence that issues of material fact existed with regard to Cate's claim of breach of the covenant of good faith and fair dealing.

In order to recover on the theory of the implied covenant of good faith and fair dealing, there must be an enforceable contract to which the covenant attaches. Beaverhead Bar Supply, Inc. v. Harrington (1991), 247 Mont. 117, 805 P.2d 560. Although Cate is correct that the implied covenant is concerned with the "justifiable expectations" of the parties, those expectations concern the parties' responsibilities under the terms of a contract:

> The nature and extent of an implied covenant of good faith and fair dealing is measured _in a particular_

5

contract by the justifiable expectations of the parties. *Tresch v. Norwest* Bank of Lewistown (1989), 238 Mont. 511, 514, 778 P.2d 874, 875-876 citing *Nicholson v. United Pacific Ins. Co.* (1985), 219 Mont. 32, 41-42, 710 P.2d 1342, 1348.

Cate cites *Blome v. Nat'l* Bank of Miles City (1989), 238 Mont. 181, 776 P.2d 525, for the proposition that a contract breach is not needed for the covenant to apply.

> The *Shiplets* seek to distinguish this authority by noting in *Nicholson,* we held a breach of contract was not a prerequisite to a breach of the covenant, because the implied covenant of good faith is not an obligation arising from the contract itself. *Nicholson,* 710 P.2d at 1348. While this is true, we also stated the obliaation imposed by the covenant is to act reasonably. Under this standard, we have held the 'minimal requirement' for breach of the covenant is action by the defendant that is 'arbitrary, capricious or unreasonable. and exceeded plaintiffs' justifiable expectation [that the defendant act reasonably].' (Emphasis added.)

*Blome,* 238 Mont. at 188. Cate then attempts to divorce the finding of a breach of the covenant from a contract altogether. He argues in essence that if he had "justifiable expectations" of continued credit, he has proven a breach of the covenant. This is not true. Those "justifiable expectations" must attach to a party's actions within the confines of its duties under a contract. If there is no contract, express or implied, concerning continued credit to Cate, then there can be no "justifiable expectations" that are pertinent here.

The *Blome* decision upon which Cate relies goes on to cite evidence indicating that First Bank acted within the confines of its responsibilities under the **terms** of its lender contracts. Thus, Cate's use of *Blome* for his argument that all that is needed

to find First Bank's breach of the covenant is his "justifiable expectations" concerning future credit is a mischaracterization of the law.

We also stated in Blome that:

> Nothing in the evidence suggests anything more than a day-to-day ormonth-to-month financing arrangement, based upon a review of the financial condition of the borrowers at the time the notes were executed and delivered. Particularly, there is no indication in the Bank memoranda or any oral evidence that the Bank did not expect the notes to be paid when due nor any agreement outside the notes for loans to the Blomes when they needed them, and without regard to the necessity of repayment. (Emphasis added.)

Blome, 238 Mont. at 186, 776 P.2d at 528. The record before us reflects banking circumstances similar to those that existed in Blome. The facts in both cases indicate that the applicable notes and contracts contained specific pay-back dates. Therefore, it was a "justifiable expectation" on the part of both parties that the borrowers would repay the loan on the due dates.

Cate has offered no evidence that a contract existed entitling him to "justifiable expectations" of continued financing. He stated in his own deposition that the bank officer with whom he had discussed a future $250,000 line of credit, did not have the authority to make such an agreement. There is no indication from the depositions that First Bank's contract contains a provision for future financing once the $127,691 loan amount was paid; thus, no express contract existed concerning future loans. Further, there is no evidence to suggest that First Bank's conduct implied a future contract. The record contains no evidence of specific terms that would indicate by First Bank's conduct that they had reached

7

an agreement to continue the financial arrangements. <u>See</u> Section 28-2-103, MCA.

We conclude that because no contract, express or implied, existed between Cate and First Bank to lend Cate additional sums of money, there could be no breach of the covenant of good faith and fair dealing. We hold that the District Court did not err in granting summary judgment to First Bank on the issue of breach of the covenant of good faith and fair dealing.

II.

Did the District Court err in failing to grant Cate's cross-motion for summary judgment concerning alteration of records?

Cate argues that he was familiar with First Bank comments on his account sheets and that these comments had been changed. Cate also argues that his office manager, Clyde Bonsack, testified during his deposition that the records as produced by First Bank are at variance with the policy and recollection of the officers in connection with their normal preparation. Cate argues that had he been permitted to introduce evidence from his expert, that evidence would have corroborated First Bank's alteration of records.

First Bank argues that Cate attempted to have his expert added to the list of witnesses a month after the deadline that the court set for the presentation of expert witness lists for both parties. First Bank protested this untimely addition, as it protested the addition of other experts which Cate attempted to add several months after the first attempt. According to First Bank, no law exists that requires it to keep its records of loan comments in any

particular form or that prohibits any modification once the comment is written. Further, First Bank argues that indications are that Cate's expert would testify to the fact that several comments were written on the same day as opposed to the dates listed for loan transactions. First Bank contends that even if this is true, Cate makes no connection between such activity and any "alteration" of records or any impermissible activity on the part of First Bank.

The court stated in its October 14, 1992 order and memorandum that no affidavits or other factual matters were included in the file which would substantiate Cate's claim of alteration of records.

Cate claims that genuine issues of material fact exist concerning whether bank records were altered so that the court erred in granting summary judgment to First Bank on the issue of the implied covenant of good faith and fair dealing. In order to rebut First Bank's successful motion for summary judgment, Cate had to prove that genuine issues of material fact existed. Oar Lock Land & Cattle Co. v. Crowley, Haughey, Hanson, Toole, & Dietrich (1992), 253 Mont.. 336, 833 P.2d 146. In order to effectuate an adequate rebuttal, Cate had to present facts of a substantial nature; speculative statements are insufficient to raise genuine issues of material fact. First Sec. Bank of Bozeman v. Jones (1990), 243 Mont. 301, 794 P.2d 679.

The record in this case does not contain such substantial facts. Because of the procedural anomalies in this case, it is necessary to lay out the circuitous procedures in order to

understand Cate's lack of substantial facts.   In an untimely move, Cate attempted to add expert testimony concerning document analysis over a month beyond the date that the court had set for distribution of lists of each party's experts. Subsequently, First Bank filed a motion in limine to exclude all of Cate's experts because he had not complied with the court's order concerning discovery.   Further, Cate's notices were inadequate, failing to contain any mention of the issues to which each expert would testify as required by Rule 26(b)(4)(A)(i), M.R.Civ.P.

At one point in this action, a substitution of judges occurred which caused delay.   The second judge issued an order on September 25, 1991, setting a trial date of November 16, 1992, and a pretrial conference on October 29, 1992.   He also set a status conference for October 17, 1991, for the court's consideration of the approximately ten unresolved motions before it.   However, at this status conference, Cate's representative was not his attorney of record.   The judge ordered Cate's attorney of record to call the court and reschedule the status conference.   There is no record that this was ever done.   Therefore, there is no final resolution of the various motions in this case, one of which is whether Cate's expert on documents is able to testify.

Nothing happened until March 24, 1992, when First Bank again filed a motion for summary judgment.   In April of 1992, Cate filed a cross-motion for summary judgment based upon his allegation that First Bank altered records and, therefore, he was entitled to summary judgment as a matter of law.   In his brief on this motion,

Cate attached a copy of the letter from his expert witness, dated March 1, 1990. The letter stated that he had made a "preliminary" analysis of copies of the bank comment sheets. This same letter is also in Cate's appeal brief.

On May 20, 1.992, Cate filed a motion with the District Court to add additional discovery to the record. One of those items is the March 1, 1990 letter from his expert on document analysis. The expert who wrote the letter is the same one that Cate had earlier attempted to add to his untimely list of experts.

The letter states that several of the bank loan comments were made at one sitting. No significance is attached to this. Further, the letter which Cate bases his rebuttal on is not the final opinion of its author. The letter states:

> My conclusions about the unnatural uniformity of the typed entries and of the initials on the three questioned pages are preliminary in the sense that confirmation would require my analysis of the original record rather than photocopies.

The record contains no indication that the originals were ever sent to the expert. The record contains no affidavit from the expert confirming his initial opinion: nor does it contain an analysis indicating impermissible activity on the part of First Bank.

Although Cate cites § 32-1-491(1), MCA, as the authority for no allowable modification of bank records, he does not explain the huge chasm between the statute's requirement that banks keep records and his determination that this means that a bank cannot modify such records. Neither does Cate explain how recording several loan comments at one sitting amounts to "alteration of

11

records" or constitutes an impermissible banking activity. Even if First Bank's general procedure is to record one comment on one day, doing otherwise does not constitute bad faith behavior per se. o authority is presented to us which would indicate that First Bank's course of dealing here was in any way impermissible activity.

We conclude that Cate has not provided substantial evidence that genuine issues of **material** fact exist. Neither has he presented any law which would entitle him to summary judgment. We, therefore, hold that the District Court did not err in failing to grant **Cate's** cross-motion for summary judgment concerning alteration of records.

Affirmed.

_____
Justice

We Concur:

_____
John Conway Harrison

_____
William E Hunt

_____

_____
Justices

12