No. 89-053

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

JULIUS R. TRESCH and JOAN TRESCH,
Husband and Wife,

Plaintiffs and Appellants,

-vs-

NORWEST BANK OF LEWISTOWN, N.A.,
JOHN DOE CORPORATION, I through V,
and JOHN DOE 1 through 10,

Defendants and Respondents.

APPEAL FROM:  District Court of the Tenth Judicial District,
In and for the County of Fergus,
The Honorable Peter Rapkoch, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Torger S. Oaas, Lewistown, Montana

For Respondent:

Donald C. Robinson and Mark W. Mattioli; Poore, Roth
and Robinson, Butte, Montana

Submitted on Briefs:  Aug. 3, 1989

Decided:  August 25, 1989

Filed:

_____
Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Julius Tresch and Joan Tresch (Tresch) appeal from an order of the Tenth Judicial District, Fergus County, granting summary judgment to respondent Norwest Bank of Lewistown, N.A. (Norwest). We affirm.

The issues in this case are:

1. Whether Norwest breached the implied covenant of good faith and fair dealing when it denied a $3,100.00 loan requested by Tresch.

2. Whether Norwest breached a fiduciary duty owed Tresch when it denied the $3,100.00 loan.

Julius and Joan Tresch have owned and operated a dairy farm near Lewistown, Montana since 1966. For over three decades, they have done their banking business with Norwest. In 1983, Tresch increased his operating loan at Norwest to the amount of approximately $147,000.00. This note was to be paid in monthly installments and was secured by an assignment of proceeds from the dairy, and other collateral. One of the terms of this financing agreement provided that Tresch could not make any capital purchase in excess of $500.00 without the express consent of Norwest.

Shortly after receiving this loan, Tresch used advanced funds to upgrade the equipment in his dairy. This upgrading included the purchase of new milking machines. Tresch quickly became dissatisfied with these machines, because he believed that they were responsible for an outbreak of "mastitis" in his dairy herd.

Mastitis is defined as an inflammation of the mammary glands in dairy cattle. It is caused and spread by toxic microorganisms. The disease is endemic to the entire dairy industry and its presence can lead to contaminated milk and the destruction of a dairy herd. Although its cause is

2

subject to debate, it is generally agreed that it can be caused by malfunctioning equipment, unsanitary conditions within the cows' environment, or improper milking procedures.

Because Tresch believed that the new milking machines were the cause of the mastitis, he approached Norwest in March of 1984, for a three thousand one hundred dollar ($3,100.00) loan which would enable him to replace the machines. Norwest doubted that this purchase would cure the mastitis problem because, as it noted, the disease had existed in his dairy herd for a number of years prior to the acquisition of the new machines. It also doubted that the purchase of new milkers would generate sufficient additional income to repay the loan.

In order to confirm this supposition, Norwest contacted the local implement dealer and the dairy extension service at Montana State University to determine if the new machines were needed. This investigation supported Norwest's original beliefs. During this inquiry, it was learned that although milking machines can cause mastitis, the primary causes are improper hygiene and sanitation, and improper milking procedures. Moreover, because the disease had been present in the herd prior to the installation of the milking machines it was doubtful that they were the cause of Tresch's problem. Consequently, the loan was denied.

Eventually Tresch obtained funds from another source, which allowed him to purchase new milking machines. Unfortunately, the mastitis problem continued and the resulting loss of production nearly forced Tresch into foreclosure in late 1986.

Because Tresch believed these problems were caused by Norwest's refusal to advance him the money he filed suit seeking compensatory and punitive damages for breach of the implied covenant of good faith and fair dealing and for

3

breach of fiduciary duty. Norwest moved for summary judgment. On October 13, 1988, this motion was granted. This appeal followed.

I

Tresch maintains that Norwest breached the implied covenant of good faith and fair dealing by refusing to loan him the funds necessary to purchase new milking machines. We disagree.

At the outset we note that this is an appeal from an order granting summary judgment. Summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.:

> The party moving for summary judgment has the burden of establishing the absence of any genuine issue of material fact and then the party opposing the motion must come forward with evidence supporting the existence of a genuine fact issue. Pretty on Top v. City of Hardin (1979), 182 Mont. 311, 315, 597 P.2d 58, 60.

However, when reviewing such an order, this Court must review the evidence in a light which is most favorable to the non-moving party. Nitschke v. Blue Cross of Montana (1988), 751 P.2d 175, 176, 45 St.Rep. 473, 475. Therefore, we must review the facts of this case in a light most favorable to Tresch in order to determine the propriety of the court's order.

Even if this Court was to assume that the implied covenant of good faith and fair dealing applies to a lending arrangement of the nature presented in this case, the facts presented do not indicate that there was any violation of this duty. In making this determination, we look to prior decisions for guidance. In Nicholson v. United Pacific Ins. Co. (1985), 219 Mont. 32, 710 P.2d 1342, we held that:

4

> The nature and extent of an implied covenant of
> good faith and fair dealing is measured in a
> particular contract by the justifiable expectations
> of the parties. Where one party acts arbitrarily,
> capriciously, or unreasonably, that conduct exceeds
> the justifiable expectations of the second party.
> The second party then should be compensated for
> damages resulting from the other's culpable
> conduct.

Nicholson, 710 P.2d at 1348.

Therefore, in order to prove that Norwest breached the covenant, Tresch must show that its decision not to advance the $3,100.00 was arbitrary, capricious or unreasonable. Under the agreed upon facts Tresch does not meet this burden.

Tresch maintains that he needed the loan in order to buy new milking machines. It was his theory, upon applying for the loan, that new machines would cure the chronic mastitis that had plagued his herd for years. Norwest doubted that this purchase would cure the problem. Norwest based its conclusion upon inquires made with an agricultural scientist at Montana State University and a local dealer who sold milking machines. Inquiry also led Norwest to believe that the new machines would not generate sufficient additional income to repay the loan.

The uncontested facts clearly establish that Norwest's refusal to advance the funds was based upon solid business reasons. It then became incumbent upon Tresch to come forward with evidence of his own that would tend to dispute this conclusion. Barich v. Ottenstrong (1976), 170 Mont. 38, 550 P.2d 395; Mayer Bros. v Daniel Richards Jewlers Inc., (1986), 223 Mont. 397, 726 P.2d 815. Tresch did not meet this burden, nor did he come forward with any other issue of material fact. In fact, as noted by the trial court, Tresch admitted in his deposition that he did not think that Norwest acted out of motives or for reasons other than those stated.

5

Therefore, the order granting summary judgment must be affirmed.

II

Tresch also maintains that Norwest breached its fiduciary duty by denying the loan. Again, we disagree.

With respect to this argument, the following provision in the loan agreement is:

"4. Borrowers shall make no capital purchases in excess of $500.00 without prior consent of the Bank."

Tresch maintains that under this clause, Norwest had the ability to exercise "absolute managerial" control over the dairy operation by retaining the power to determine which expenditures could be made. He further states because Norwest took "complete charge" over the finances of the Tresch Dairy, it had a duty to place the interests of Tresch on par with its own interest.

Assuming arguendo that such a clause leads to the creation of a fiduciary duty, we fail to find that Norwest acted unreasonably or unfairly towards Tresch. As stated earlier, Norwest's refusal was based upon solid business grounds and there are no facts to refute it. Accordingly, Norwest's refusal was not a breach of any fiduciary duty which may have been owed to Tresch. We affirm.

_____
Justice

We Concur:

_____
Chief Justice

_____

6

_William E. Smith_

_P.C. Gulbrandson_
Justices