No. 90-016

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

AARON and STELLA LACHENMAIER,
husband and wife,

Plaintiffs and Appellants,

-v-

FIRST BANK SYSTEMS, INC,; FBS CREDIT
SERVICES, member First Bank System,
and FIRST STATE BANK OF FORSYTH,

Defendants and Respondents.

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Rosebud,
The Honorable Joe L. Hegel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

A. Cliff Edwards and David R. Paoli, Billings,
Montana

For Respondent:

Stephen D. Bell; Dorsey & Whitney; Billings, Montana
David A. Ranheim, Minneapolis, Minnesota

Submitted on Briefs: August 7, 1990

Decided: December 12, 1990

Filed:

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

The appellants Aaron and Stella Lachenmaier initiated this suit against the defendants alleging commercial bad faith and other breaches of contract and tort obligations. The Lachenmaiers appeal the order of the Sixteenth Judicial District Court, Rosebud County, granting the defendants', First Bank Systems, Inc., FBS Credit Services, Inc., and First State Bank of Forsyth, joint motion for summary judgment on the plaintiffs' claims of breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty and tortious interference with contract. The District Court also granted the defendants' motion for summary judgment on their counterclaim to foreclose on the Lachenmaier's mortgage and promissory notes. We affirm.

The Lachenmaier's raise five issues on appeal:

1) Did the District Court err in ruling the defendants did not breach the implied covenant of good faith and fair dealing?

2) Did the District Court err in ruling the defendants owed no fiduciary duty to the plaintiffs?

3) Did the District Court err in ruling as a matter of law that there was no tortious or intentional interference of contract by CSI and First Bank System in regard to the contract between First State Bank of Forsyth and the Lachenmaiers?

4) Did the District Court err in granting summary judgment on the plaintiffs' claims of intentional infliction of emotional distress?

5) Did the District Court err in granting defendants' motion

2

for summary judgment on the counter-claim to foreclose mortgages and promissory notes?

The Lachenmaiers owned and operated a farming and ranching business operation near Hathaway in Rosebud County, Montana for approximately twenty years. During this period the Lachenmaiers did their banking exclusively with defendant First State Bank of Forsyth (Bank). The Bank was owned by defendant First Bank Systems, Inc. (FBS) as a wholly-owned subsidiary, until 1986 when it was sold to local investors.

From 1964 to 1971 the Lachenmaiers were consistently satisfactory sugar beet and grain producers. In 1971 the Lachenmaiers lost their sugar beet contract when the Hardin sugar beet factory closed. The Lachenmaiers then focused on raising crops for sale and ran a small cow-calf operation from 1972 through 1978. Also, in the early 1970's the Lachenmaiers bought some additional 800 plus acres of land, borrowing $40,000 from the Bank.

In 1978, allegedly upon the recommendation of the Bank president at the time, Mr. Thiesen, the Lachenmaiers switched to a feeder cattle operation to make better use of the feed raised on the farm. The Bank basically provided operating funds to the Lachenmaiers on an annual basis. The cattle operation sustained substantial operating losses nearly every year until 1986 when this action was commenced. The losses were a combined result of drought, grasshoppers, poor commodity prices, failure of the cattle to achieve projected weight gains, and increased operating and equipment expenses.

3

In 1985, as a condition of further financing, the Bank required the Lachenmaiers to apply for a Farmers' Home Administration (FmHA) guarantee. The FmHA agreed to guarantee to the Bank 90% of the Lachenmaier's already accrued operating expenses on the $275,000.00 face amount of the loan. The guarantee provided for a twenty year amortization rate with a balloon payment in seven years, with the Bank to provide annual operating funds in accordance with attached budgets.

In the 1985-86 cattle year, as a result of low weight gains and the federal dairy cow buy-out, the Lachenmaiers sustained a $79,000 operating loss and failed to pay their operating loan, due on April 25, 1986. Shortly thereafter, in May, the Bank advised the Lachenmaiers that their loans were being transferred to the other defendant, FBS Credit Services, Inc. (CSI). CSI is also a wholly-owned subsidiary of FBS. The Lachenmaiers' loans were assigned to CSI as "problem loans" in conjunction with FBS's divestiture of the Bank in Forsyth. After reviewing a proposed budget provided by the Lachenmaiers--which did not show a positive cash flow--CSI advised the Lachenmaiers that they would only extend additional credit in the amount of $69,000 for a period of six months and any further extension of credit would depend upon the ability of the Lachenmaiers to provide a realistic budget which would provide for a pay-down of the debt.

After negotiations between the Lachenmaiers and CSI through the summer and fall of 1986, the Lachenmaiers referred all further contact and correspondence to their attorney. They filed suit in

4

November, 1986, alleging various breaches of duties sounding in both tort and contract. Following extensive discovery, the District Court entertained defendants' motions for summary judgment, defendants' motions in limine and plaintiffs' motion in limine. The trial court issued a memorandum and order granting the defendants' joint motion for summary judgment, dismissing the plaintiffs' complaint with prejudice, and granting the Bank's motion for summary judgment on its counterclaim for foreclosure. From this order the Lachenmaiers now appeal.

## STANDARD OF REVIEW

In order for summary judgment to issue, the movant must demonstrate that there is no genuine issue as to all facts deemed material in light of the substantive principles entitling the movant to judgment as a matter of law. Rule 56(c), M.R.Civ.P; Cecil v. Cardinal Drilling Co. (Mont. 1990), 797 P.2d 232, 234, 47 St.Rep. 1673, 1676. Cereck v. Albertson's, Inc. (1981), 195 Mont. 409, 411, 637 P.2d 509, 511. If the movant meets this burden, it then shifts to the non-moving party to demonstrate a genuine issue of material fact. Cecil, 797 P.2d at 235, Thelen v. City of Billings (1989), 238 Mont. 82, 85, 776 P.2d 520, 522; Gamble Robinson Co. v. Carousel Properties (1984), 212 Mont. 305, 312, 688 P.2d 283, 287. As our forthcoming discussion will indicate, the Lachenmaiers fail to meet this shifted burden.

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

In its memorandum opinion accompanying the order granting summary judgment, the District Court relied heavily on the case of

Montana Bank of Circle, N.A. v. Ralph Meyers and Son, Inc. (1989), 236 Mont. 236, 245, 769 P.2d 1208, 1214, for the proposition that breach of the implied covenant of good faith and fair dealing can only occur in a commercial setting after a breach of an express term of the underlying contract. In an effort to provide more workable guidelines this Court recently reassessed the implied covenant of good faith and fair dealing. In Story v. City of Bozeman (Mont. 1990), 791 P.2d 767, 775, 47 St.Rep. 850, 859, we held that

> [E]very contract, regardless of type, contains an implied covenant of good faith and fair dealing. A breach of the covenant is a breach of the contract. Thus, breach of an express contractual term is not a prerequisite to breach of the implied covenant.

We also held that for every contract not covered by a more specific provision, the standard of conduct required of contracting parties is "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." Section 28-1-211, MCA; Story, 791 P.2d at 775. We then equated this standard to the one applicable to merchants under the uniform commercial code:

> Each party to a contract has a justified expectation that the other will act in a reasonable manner in its performance or efficient breach. When one party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract, the contract is breached.

Story, 791 P.2d at 775.

Here, no evidence was presented that the Bank breached the "honesty in fact" standard. Plaintiff claims that the evidence

6

indicates that the Bank in Forsyth continued to loan and encourage them to borrow more money simultaneous with the regional office's and CSI's plans to liquidate their assets and foreclose on the debt. At most, these allegations might indicate FBS's corporate right hand acting one way and its left hand--without knowing what the right hand was doing--acting in another. It is not, however, proof that the defendants, in particular the Bank, utilized discretion conferred by the loan agreements to act dishonestly or outside of accepted commercial practices to deprive the Lachenmaiers of the benefit of the agreement. The Bank did not stand to gain anything from its actions, it was simply exercising sound business judgment as a creditor in acting to foreclose a "problem" loan. See e.g. Tresch v. Norwest Bank of Lewistown (1989), 238 Mont. 511, 778 P.2d 874; Coles Department Store v. First Bank Billings N.A. (1989), 240 Mont. 226, 783 P.2d 932, Randolph v. Peterson Inc. (1989), 239 Mont. 1, 778 P.2d 879; Blome v. First National Bank of Miles City (1989), 238 Mont. 181, 776 P.2d 525; Central Bank of Montana v. Eystad (1985), 219 Mont. 69, 710 P.2d 710; First National Montana Bank of Missoula v. McGuiness (1985), 217 Mont. 409, 705 P.2d 579.

Furthermore, the parole evidence rule and the statute of frauds, § 28-2-903, MCA, preclude the Lachenmaiers from alleging a course of dealing here amounting to an oral agreement for continued financing. Under the doctrine of merger as enunciated in McGuiness any such oral representations merged with the terms of the note, which then became the final agreement between the

7

parties. Blome, 776 P.2d at 528, Shiplet v. First Security Bank of Livingston, Inc. (1988), 234 Mont. 166, 171, 762 P.2d 242, 245. Thus, the Bank is not precluded by any alleged prior oral representations in exercising its good business judgment in foreclosing on the notes in this case. Also, the Lachenmaier's reliance on Weinberg v. Farmer's State Bank of Worden (1988), 231 Mont. 10, 752 P.2d 719, as controlling on the issue of breach of the implied covenant is misplaced. While the factual background of Weinberg is similar, plaintiffs' attempt to construe the FmHA agreement here as analogous to the one in Weinberg fails. In Weinberg, the guarantee between the Lender and the FmHA was incorporated on the face of the promissory note between the lender and the borrower. See Shiplet, 762 P.2d at 244-245. Furthermore, the bank in Weinberg was found in breach of that agreement when it attempted to vary the interest rates set forth in the original note. Here, there was no incorporation of the FmHA agreement into the notes between the borrower and the lender, thus the borrowers were not a party to the FmHA guarantee and cannot attempt to enforce an alleged promise by the Bank based on the guarantee. Shiplet, 762 P.2d at 245, 246.

Finally, the Lachenmaiers argue that the facts here fit under the "special relationship" tort criteria set forth in Story. In Story we noted that tort damages were only available in breach of implied covenant cases involving "special relationships which are not otherwise controlled by specific statutory provisions." Story, 791 P.2d at 776. Regardless, for a plaintiff to maintain a cause

8

of action for breach of the implied covenant, whether it is based in contract or based on the "special relationship" criteria giving rise to a tort, the plaintiff must first show a breach of the honesty in fact standard. Kinniburgh v. Garrity (Mont. 1990), 798 P.2d 102, 105, 47 St.Rep. 1655, 1658; Story, 791 P.2d at 775. Even if the Lachenmaiers could demonstrate breach of the honesty in fact standard, they failed to set forth evidence of each and every element of the special relationship criteria, particularly the element requiring that the relationship between the parties must be based on a non-profit motivation. See Story, 791 P.2d at 776.

## FIDUCIARY DUTY

The Lachenmaiers contend that their fiduciary relationship with the Bank is evidenced by the fact that Lachenmaiers banked with First Bank Forsyth exclusively for over twenty-two years. During this relationship the Lachenmaiers claim that they sought and received the advice and counsel of First Bank Forsyth. The Lachenmaiers also contend that the Bank instructed them to buy more cattle and switch to a feeder operation, and that under Weinberg these alleged facts are sufficient to indicate the existence of a fiduciary relationship.

It is the law in Montana that "[t]he relationship between a bank and its customer is generally described as that of debtor and creditor . . . and as such does not give rise to fiduciary responsibilities." Deist v. Wacholz (1984), 208 Mont. 207, 216, 678 P.2d 188, 193 [citations omitted]. Shiplet 762 P.2d at 248;

9

Simmonds v. Jenkins (1988), 230 Mont. 429, 433, 750 P.2d 1067, 1070. A limited exception to this general rule has been recognized upon proof of "special circumstances," as, for example, where a bank is "thrust beyond the role of a simple creditor into the role of an advisor." Diest, 678 P.2d at 193; Simmons, 750 P.2d at 1070; Pulse v. North American Land Title Co. of Montana (1985), 218 Mont. 275, 283, 707 P.2d 1105, 1110. This Court has recognized that no fiduciary duty arises between a bank and its borrower where the bank did not offer financial advice, its advice was not always heeded, or where the borrower was advised by others, such as legal counsel. Simmons, 750 P.2d at 1070; Shiplet, 762 P.2d at 248.

The District Court concluded there was no special relationship beyond the normal debtor-creditor relationship between a bank and its customer. While noting that the Bank and the Lachenmaiers enjoyed a long and exclusive commercial relationship, the District Court pointed out that neither was tied to the other and the Lachenmaiers were free to transfer their loans to another financial lending institution at any time.

A review of the Lachenmaier's evidence in the light most favorable to them may indicate the existence of disputed facts regarding whether the Bank did in fact act as a financial advisor during the course of its long relationship with the Lachenmaiers. However, even assuming the defendant Bank owed a fiduciary duty, the bank was under no obligation to loan the Lachenmaiers money under the FmHA guarantee, and there was no breach of fiduciary duty when the Bank acted for solid business reasons. See Tresch v.

10

<u>Norwest Bank of Lewistown</u> <u>supra</u>, 778 P.2d at 876. Thus, any factual issues concerning the existence of a fiduciary relationship here are immaterial for purposes of summary judgment.

## INTERFERENCE WITH CONTRACT

The Lachenmaiers contend that both CSI and FBS tortiously interfered with the contracts entered into between the Lachenmaiers and their Bank. The District Court found that "the parties defendant are in a parent-subsidiary relationship and the parent FBS has a right to participate in the affairs of its subsidiary and to make investment and loan decisions that are in the best interests of its shareholders, so long as, in doing so, it does not breach its contractual obligations with its borrowers."

We agree. In order to make out a claim for tortious interference with the contractual relationship the complaint must allege: (1) that a contract was entered into, (2) that its performance was refused, (3) that such refusal was induced by unlawful and malicious acts of the defendant, and (4) that damages have resulted to the plaintiff. Phillips v. Montana Education Association (1980), 187 Mont. 419, 423, 610 P.2d 154, 157. Here, CSI was acting as a contractual servicing agent of the Bank. An agent is privileged, when acting on behalf of its principal, to interfere with a contract between its principal and a third party. Cotton v. Otis Elevator (S.D. W.Va. 1986), 627 F.Supp. 519, aff'd 841 F.2d 1122 (4th Cir. 1988). An agent's acts, if motivated and taken in furtherance of the purposes and interests of its principal, will not give rise to a cause of action for tortious

11

interference of a contract between its principal and a third party. Phillips, 610 P.2d at 158. The contractual interference claim against CSI fails.

The Lachenmaiers' claim against FBS for interference with contract must also fail. At all times relevant to this case First Bank Forsyth and CSI were wholly owned subsidiaries of FBS. A parent corporation is privileged to "interfere" in a contract between its subsidiary and a third party to protect its own legitimate economic interest and such interference will not give rise to tort liability. Bendix Corp. v. Adams (Alaska 1980), 610 P.2d 24, 31-32.

## EMOTIONAL DISTRESS

In denying the Lachenmaiers' claim for intentional infliction of emotional distress the District Court noted that the Lachenmaiers failed to produce evidence of outrageous, extreme, unlawful or unreasonable acts by the defendants. We agree. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Restatement 2d of Torts § 46, comment d; Frigon v. Morrison-Maierle, Inc. (1988), 233 Mont. 113, 123-124, 760 P.2d 57, 63-64. Furthermore, the Bank in this case cannot be said to have acted "beyond all possible bounds of decency" where it merely exercised a legal right to foreclose on the mortgage and notes. "The actor is never liable . . . when he has done no more than to insist upon his legal rights

12

in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." Restatement 2d of Torts, § 46, comment g. See also, e.g. Ledl v. Quick Pick Food Stores, Inc. (Mich. App. 1984), 349 N.W.2d 529, 533; Batchelor v. Sears, Roebuck & Co. (E.D. Mich. 1983), 574 F. Supp. 1480, 1489. The District Court correctly held there was no outrageous conduct.

## DEFENDANTS' COUNTERCLAIM

The defendants filed a counterclaim seeking to collect from the Lachenmaiers all amounts presently due and owing the Bank. Finding the Lachenmaiers had defaulted, the District Court granted the defendants' motion for summary judgment on the counterclaim.

We agree with the District Court's holding. The Lachenmaiers signed the credit agreement with the Bank dated November 15, 1985 and a promissory note dated November 4, 1985. Under the terms of the November 4 note, the Lachenmaiers were obligated to make seven annual payments of $35,990.69 payable on November 4 of each year. On November 15, 1985, the Lachenmaiers executed a "Note for Funds to be Advanced in the Future." The line of credit note was expressly made due and payable in full on April 25, 1986.

The Lachenmaiers defaulted on the line of credit note by failing to make payment of $77,064.40 on April 25, 1986. The Lachenmaiers admit their default. The Lachenmaiers also defaulted on the November 4 note by failing to make payments due and owing on November 4, 1986, November 4, 1987 and November 4, 1988. The Lachenmaiers admit the default.

Because the Lachenmaiers defaulted on these written agreements

with the Bank the amounts due have been accelerated. The District Court correctly granted summary judgment to the defendants on the counterclaim.

We affirm.

_____
Justice

We Concur:

_____
Chief Justice

_____
Justices

_____
Honorable Henry Loble, District Judge

14