JUSTICE TRIEWEILER
specially concurring in part and dissenting in part.
I concur with the conclusion in the majority opinion that there was an issue of fact which precluded summary judgment dismissing Simmons’ contract claim for breach of the covenant of good faith and fair dealing. I dissent from that part of the majority’s opinion dismissing Simmons’ tort claim for breach of the covenant of good faith for the reasons set forth in my dissenting opinion in McNeil v. Currie (1992), 253 Mont. 9, 830 P.2d 1241. The right to tort damages arose because of activity in Montana — not California, therefore, Wallis v. Superior Court (1984), 160 Cal.App.3d 1109, 207 Cal. Rptr. 123, is not controlling, and as I have previously stated, I would not follow Story v. City of Bozeman (1990), 242 Mont. 436, 791 P.2d 767.
I also dissent from that part of the majority opinion which affirms the District Court’s order dismissing Simmons’ claim for breach of fiduciary duty. Summary judgment is an extreme remedy which should not be granted when there is any genuine issue of material fact; the procedure should never be substituted for trial if a material factual controversy exists. Beaverhead Bar Supply, Inc. v. Harrington (1991), 247 Mont. 117, 120, 805 P.2d 560, 562. Furthermore, all reasonable inferences that might be drawn from the offered evidence should be drawn in favor of Simmons, as the party opposing summary judgment in this case. Cereck v. Albertson’s, Inc. (1981), 195 Mont. 409, 411, 637 P.2d 509, 511.
When our previous decisions which discuss the circumstances under which a fiduciary duty is established are applied to the facts in this case, I conclude that whether there was a fiduciary duty and a breach by the defendant were issues of fact to be decided by the jury. The majority opinion cites Deist v. Wachholz (1984), 208 Mont. 207, 678 P.2d 188, and Lachenmaier v. First Bank Systems, Inc. (1990), 246 Mont. 26, 803 P.2d 614, for the proposition that a fiduciary duty can only arise between a bank and its creditor when the bank fills the role of advisor to its creditor. However, it is clear from those opinions that a fiduciary duty arises when there is a special relationship between the bank and its creditor and the relationship of advisor/advisee is only one of the relationships which can create a fiduciary duty on the part of the bank.
*93 The only thing consistent about this Court’s prior decisions on this subject has been its holding that the existence of “special circumstances” may result in an exception to the general rule that a bank’s relationship with its customers is not a fiduciary one. Whether or not there were special circumstances which should give rise to a fiduciary duty is a classic question of fact. In this case, Simmons contends that the degree of control exerted by Wells Fargo Bank amounts to “special circumstances.” A fiduciary relationship may arise if a creditor gains substantial control over the debtor’s business affairs. Blue Line Coal Co., Inc. v. Equibank (E.D. Pa. 1988), 683 F. Supp. 493, 496. In NCNB National Bank of North Carolina v. Tiller (4th Cir. 1987), 814 F.2d 931, 936, the kind of activity which establishes a lending institution’s control over a borrower was defined as “actual day-to-day involvement in management and operations of the borrower or the ability to compel the borrower to engage in unusual transactions.”
The majority has concluded as a matter of law that there are no special circumstances, and therefore, no fiduciary obligation due to the fact that once the 1984 master agreement and the 1985 restructuring agreement were entered into, the bank no longer exerted daily control over Simmons’ operations and direct communications between the two entities declined significantly. The majority concedes that before 1984 the bank exercised day-to-day control over nearly every facet of the refinery’s operations, but seizes upon the fact that this close relationship was not evidenced thereafter. However, the following facts, which were in evidence, establish that even after the restructuring agreement and formation of the Montana Refining Company, the bank retained the ability to compel Simmons to engage in unusual transactions and continued to exert unusual control over Simmons by virtue of the terms of the agreements:
1. The 1984 master agreement (which formed the Montana Refining Company) required the bank’s approval of the refinery’s annual budget, and express written approval before any capital expenditures greater than $200,000 could be made. Simmons Refining Corporation remained a limited partner in the new company.
2. Even though Simmons was a partner in the new refining company pursuant to the 1984 master agreement, and was a party to the agreement establishing the distribution of refinery cash flow, the bank could change that distribution without Simmons’ consent.
3. The 1985 agreement restructured Simmons’ debt through a new “carry-back promissory note” for $10 million from Simmons Refining Company to the bank, and a new “SOC promissory note” for $2.5 *94 million from Simmons Oil Company to the bank. The new SOC note had an interest rate of 20 percent per year, almost double the prime rate. Furthermore, Simmons Refining Company was prohibited from obtaining credit from any other lender without the bank’s approval. Simmons was locked into the notes and could not prepay, and was powerless to get other financing.
4. Under the terms of the 1985 agreement, the bank took complete control of Simmons Refining Company’s business by prohibiting Simmons from incurring any indebtedness, liabilities, lease payments, guarantees, security interests, or any other obligations without the bank’s prior written consent.
5. Also instructive is this Court’s previous observation in Simmons Oil Corporation v. Holly Corporation (1990), 244 Mont. 75, 796 P.2d 189, to the effect that Wells Fargo’s affiliation with Simmons
extended far beyond that of the simple creditor-debtor relationship. Wells Fargo loaned Simmons large sums of money, knowing these sums were destined for Montana. It protected its interests by exercising financial control over the refinery, retaining the authority to approve expenditures of the refinery and becoming the outright owner of Simmons’ profits from the refinery.
... The sale of debt, the act that constituted Wells Fargo’s alleged breach of duty, was merely the final act in the chain.
Simmons, 796 P.2d at 196.
These examples demonstrate that the bank actively assumed a relationship far beyond the usual debtor-creditor relationship. During the period of time that the majority states there were no “direct contacts” between Simmons and bank personnel, the evidence establishes that the bank still exerted control over Simmons. Simmons was powerless to get other financing without the bank’s approval; it was locked into a note that could not be prepaid; and the bank continued to control the annual budget and expenditures for the refining company in which Simmons was a limited partner. A jury could properly find a type of “special relationship” which gave rise to a fiduciary obligation from the bank to Simmons. Based on these facts, this issue cannot be resolved by summary judgment.
For the same reasons that the majority concluded there was evidence sufficient to support a claim for breach of the covenant of good faith, I conclude there was also evidence to support a claim that the bank breached its fiduciary duty to Simmons. I would remand to *95 the District Court for a jury trial on Simmons’ claim that the bank breached its fiduciary duty.
I also dissent from the majority’s conclusion that because Simmons settled its claim against Holly Corporation and dismissed its appeal against that defendant, Simmons is precluded from pursuing its claim for civil conspiracy against the bank.
There was nothing about Simmons’ settlement with Holly Corporation which resolved the merits of that claim. Furthermore, settlement of claims is presumed to be in the best interests of the parties, the courts, and the Montana public. State ex rel. Deere v. District Court (1986), 224 Mont. 384, 730 P.2d 396. Settlement of claims should be encouraged by this Court, not discouraged. Yet, the majority opinion will make it impossible for a plaintiff to settle with one of two tort feasors under similar circumstances in the future.
Based on this decision, future defendants like Holly Corporation will simply have to continue to be involved in the litigation and incur the attendant expenses so long as Simmons is unable to resolve its differences with some other alleged co-conspirator. Defendants like Holly Corporation will have absolutely no control over their own destiny because no future plaintiff will be able to settle a claim with one defendant until the case has been resolved against all defendants. This is bad public policy and serves no rational purpose under the circumstances in this case.
For these reasons, I dissent from the majority opinion. I would remand the issues of breach of fiduciary duty and civil conspiracy to the District Court for resolution of the factual issues that have been raised by the evidence that is already in the record.
JUSTICE HUNT concurs in the foregoing concurrence and dissent of JUSTICE TRIEWEILER.