JUSTICE MCKINNON,
concurring in part and dissentingin part.
*60 ¶72 At its inception, and throughout the proceedings in the District Court, this lawsuit has been about two things: (1) enforcing a modified loan, and (2) obtaining damages for alleged torts arising from the loan modification. What the Morrows primarily want is a court decree that their original mortgage has been modified, pursuant to discussions with Bank of America employees over the telephone, to have an extended term and a lower interest rate. This is not possible, of course, because such agreements must be in writing. Indeed, the Morrows’ attempt to enforce oral communications concerning a mortgage is contrary to fundamental and longstanding principles of contract law, which mandate that agreements relating to real property be in writing. Ducie v. Ford, 8 Mont. 233, 237, 19 P. 414, 415 (1888); Hinebauch v. McRae, 2011 MT 270, ¶ 23, 362 Mont. 358, 264 P.3d 1098. It is also contrary to the recording system, which is founded on the principle that interests in real property must be written and duly recorded. Sections 70-21-301,-302, MCA; Earl v. Pavex, Corp., 2013 MT 343, ¶¶ 17-18, 372 Mont. 476, 313 P.3d 154.
¶73 Hence, the Morrows are left with only the possibility of recovering tort damages arising out of the manner in which Bank of America handled their request for a loan modification. I agree with the Court that the Morrows have alleged facts which, if proved, would establish that Bank of America owed them a fiduciary duty in managing the loan-modification process. I also agree that the Morrows may pursue a claim of negligent misrepresentation as defined in Restatement (Second) of Torts § 552 (1977). Finally, I agree that the Morrows’ allegations regarding Bank of America’s conduct, if true, would constitute a practice that violates the Montana Consumer Protection Act.
¶74 Beyond this, however, I do not agree with the Court’s analysis of the Morrows’ fraud claims. While I conclude, as does the Court, that the Morrows may proceed with a claim of actual fraud, I believe our Opinion blurs the distinction between actual fraud and negligent misrepresentation. In my view, it is important in this case that we clarify that distinction. Furthermore, I do not agree with the Court that the Morrows have stated a claim of constructive fraud. Thus, for these reasons, I concur in the Court’s resolution of Issues One, Two, Three, Four, Five, and Seven, but write separately to discuss certain facets of Issues Two, Four, and Five. I dissent as to Issue Six.
*61 Issue Two - Negligence
¶75 I agree with the Court’s analysis and conclusion under Issue Two that the District Court erred in granting Bank of America summary judgment on the Morrows’ negligence claim. Since there are genuine issues of material fact regarding this claim, Opinion, ¶ 42,1 believe it is important to discuss how our decision in Gliko v. Permann, 2006 MT 30, 331 Mont. 112, 130 P.3d 155, applies in the present context.
¶76 The relationship between a bank and its customer is generally described as that of debtor and creditor. Deist v. Wachholz, 208 Mont. 207, 216, 678 P.2d 188, 193 (1984). As such, a financial institution generally owes no fiduciary duty to a borrower when the institution’s involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. Deist, 208 Mont. at 216, 678 P.2d at 193; Lachenmaier v. First Bank Sys., Inc., 246 Mont. 26, 33, 803 P.2d 614, 618 (1990). A limited exception to this general rule has been recognized where there is proof of “special circumstances” — as, for example, where a bank is thrust beyond the role of a simple creditor into the role of an advisor, thereby creating a relationship of trust and confidenceLachenmaier, 246 Mont. at 33, 803 P.2d at 618; Deist, 208 Mont. at 216-17, 678 P.2d at 193. To establish a fiduciary relationship, the bank must “act as a financial advisor in some capacity, other than that common in the usual arms-length debtor/creditor relationship.” Coles Dept. Store v. First Bank (N.A.)—Billings, 240 Mont. 226, 229, 783 P.2d 932, 934 (1989) (internal quotation marks omitted); accord First Sec. Bank v. Abel, 2008 MT 161, ¶ 34, 343 Mont. 313, 184 P.3d 318.
¶77 In Gliko, the parties disputed whether the existence of a “special relationship” giving rise to a fiduciary duty between a bank and its customer is a question of fact or a question of law. We noted that there were precedents supporting both approaches. Gliko, ¶¶ 16-23. After discussing these precedents, we held that
whether a fiduciary duty exists between two parties is a question of law, not fact, and it may be resolved on summary judgment when no genuine issues of material fact remain. Likewise, whether a “special relationship” exists between two parties such as would give rise to a fiduciary duty is a question of law, not fact, for the relationship and the duty are two sides of the same coin. To determine the existence or absence of a special relationship in cases where it normally does not exist — such as between a bank and a customer — a court may be required to make a fact-intensive inquiry. The circumstances of the particular relationship are *62 factual, and disputes over material facts will preclude summary judgment. However, the conclusion drawn by a court from undisputed facts is one of law, not of fact.
Gliko, ¶ 24 (emphasis in original).
¶78 As clarified in Gliko, therefore, the existence of a special relationship is a question of law that is determined by the court based on the facts of the case. Where the material facts are undisputed, the existence of a special relationship may be resolved on summary judgment. Gliko, ¶ 16 (citing cases standing for the proposition that, “in the absence of a genuine issue of material fact, the question of the existence of a fiduciary relationship could properly be resolved on summary judgment”). But, where there are genuine issues of material fact relating to the existence of a special relationship, it becomes necessary for a fact-finder to resolve the factual dispute one way or the other. If the fact-finder resolves the factual dispute in favor of the customer, by finding the facts necessary to establish a special relationship, then a fiduciary duty exists as a matter of law and the issue then becomes whether the bank breached that duty and thereby caused the customer damages. Conversely, if the fact-finder resolves the factual dispute in favor of the bank, by finding facts that do not support a special relationship, then a fiduciary duty does not exist and the customer’s negligence claim fails.
¶79 Importantly, then, in situations where the material facts are disputed, the existence of a special relationship is still a question of law. Gliko, ¶ 24. If the court determines that the facts alleged by the customer would not support a special relationship, even if those facts were resolved by the fact-finder in the customer’s favor, then the customer’s negligence claim necessarily fails and summary judgment for the bank is proper. On the other hand, if the trial court determines that the facts alleged by the customer would support a special relationship if they were resolved by the fact-finder in the customer’s favor, then summary judgment is not proper. This latter scenario is what we have determined exists here. Opinion, ¶ 37 (“The Morrows have alleged facts which, if proven, would establish that Bank of America owed them a fiduciary duty.”).
¶80 Properly instructingthe jury is critical to this scheme. On remand, the District Court will need to identify the specific facts which, if proved by the Morrows, would establish that Bank of America had a “special relationship” with them. The relevant facts alleged by the Morrows are discussed at ¶¶ 37 and 41 of our Opinion. The District Court also may draw from a long line of authority identifying what *63 facts are essential to the creation of a fiduciary duty between a bank and its customer. See e.g. Deist, 208 Mont. at 216-18, 678 P.2d at 193-94; Pulse v. N. Am. Land Title Co. of Mont., 218 Mont. 275, 283-84, 707 P.2d 1105, 1110 (1985); Simmons v. Jenkins, 230 Mont. 429, 433-34, 750 P.2d 1067, 1070 (1988); Shiplet v. First Sec. Bank of Livingston, Inc., 234 Mont. 166, 176, 762 P.2d 242, 248 (1988); Simmons Oil Corp. v. Holly Corp., 258 Mont. 79, 85-86, 852 P.2d 523, 526-27 (1993). The District Court will then need to instruct the jurors that if they find these facts were proved by a preponderance of the evidence, then Bank of America owed the Morrows a fiduciary duty and the jurors must proceed to the questions of breach, causation, and damages. The jurors will need to be further instructed that if they find these facts were not proved, then Bank of America owed the Morrows no duty and there is nothing further to determine regarding the Morrows’ negligence claim.
¶81 I believe that instructing the jurors in this manner is necessary to maintain our clarifications in Gliko. The facts, where there is a genuine dispute, are d etermined by a fact-finder.[1] But whether the facts, if resolved by the fact-finder in the plaintiffs favor, would be sufficient to establish a “special relationship” creating a fiduciary duty is determined as a matter of law by the court. With these observations, I concur in the Court’s resolution of Issue Two.
Issue Four - Statute of Frauds
¶82 The District Court agreed with Bank of America’s argument that the Morrows cannot use fraud claims to enforce an alleged oral contract. In this respect, I believe the District Court’s decision is correct. As we explain, “a claim of fraud may not serve as an alternative means of enforcing an oral agreement within the Statute of Frauds, because ‘the breach of a promise which the law does not regard as binding is not a fraud.’ ” Opinion, ¶ 54 (quoting Austin v. Cash, 274 Mont. 54, 62, 906 P.2d 669, 674 (1995)). To hold Bank of America liable in fraud for failing to honor an unenforceable contract would effectively nullify the Statute of Frauds.
¶83 In litigation of this nature, however, the parties and the court must recognize the subtle distinctions between (1) a contract action where a party is trying to enforce or rescind a contract and (2) a tort *64 action where a party is alleging fraud surrounding an alleged contract. For example, an action is permissible for fraudulent representations that preceded a contract and allegedly induced the aggrieved party into signing the contract. Such an action is in tort, independent of any contract action. State ex rel. Dimler v. Eleventh Jud. Dist. Ct., 170 Mont. 77, 81-82, 550 P.2d 917, 919-20 (1976); see also Falls Sand & Gravel Co. v. W. Concrete, Inc., 270 F. Supp. 495, 500 (D. Mont. 1967) (“ ‘[Q]ne who has been fraudulently induced into a contract may elect to stand by that contract and sue for damages for the fraud.’ ” (quoting Bankers Trust Co. v. Pac. Employers Ins. Co., 282 F.2d 106, 110 (9th Cir. 1960))). We have also stated that the Statute of Frauds does not apply to liability based on fraud or negligent misrepresentation. Phil-Co Feeds, Inc. v. First Natl. Bank in Havre, 238 Mont. 414, 421, 777 P.2d 1306, 1311 (1989).
¶84 I thus agree with the Court that an action in tort may be maintained independently of an action in contract, given appropriate facts. Opinion, ¶ 54. Nevertheless, as Justice Cotter noted in her dissent in Town of Geraldine v. Mont. Mun. Ins. Auth., 2008 MT 411, 347 Mont. 267, 198 P.3d 796, “the dividing line between breaches of contract and torts often lies in a twilight zone, where it is difficult to determine whether the case applies strictly to the one or to the other.” Town of Geraldine, ¶ 37 (Cotter & Leaphart, JJ., dissenting) (internal quotation marks omitted). I believe the dividing Une in the present case — between the contract claim to enforce an oral modification to a mortgage, and the tort claims seeking damages based on the parties’ underlying communications — lies in that “twilight zone.” Nevertheless, the Morrows have alleged that Bank of America made material representations which turned out to be false, and that they were injured due to their justified reliance on these representations. These allegations are independent of the Morrows’ contract claim and sound in tort. I thus concur in the Court’s conclusion that the District Court erred in granting summary judgment to Bank of America on the Morrows’ non-contract claims, based on the Statute of Frauds. Opinion, ¶ 55.
Issue Five - Actual Fraud
¶85 According to the Court’s Opinion, the Morrows may establish claims of negligent misrepresentation and actual fraud if they prove the following:
negligent misrepresentation: Bank of America, in the course of its business, supplied false information for the guidance of the Morrows in their business transaction; Bank of America failed to *65 exercise reasonable care or competence in obtaining or communicating this information; the Morrows justifiably relied upon the information; and the Morrows suffered pecuniary loss as a result. Opinion, ¶¶ 45-46 (citing Restatement (Second) of Torts § 552).
actual fraud: Bank of America made a false representation to the Morrows; the representation was material to their requested loan modification; Bank of America knew the representation was false or was ignorant of its truth; Bank of America intended the Morrows to act upon the representation in the manner reasonably contemplated; and the Morrows were ignorant of the representation’s falsity, justifiably relied upon its truth, and suffered damages as a result. Opinion, ¶ 57.
¶86 As articulated, these two causes of action appear essentially the same. Both are satisfied if the Bank supplied false information for the Morrows’ use or guidance, the Bank was ignorant (perhaps due to a lack of reasonable care) about the information’s truth, and the Morrows justifiably relied on the information to their detriment. Indeed, the Court states that “[t]he Morrows’ claim of fraud rests on the same factual allegations as [their] claim of negligent misrepresentation.” Opinion, ¶ 58. In particular, the Bank allegedly made several false statements regarding the servicing of the Morrows’ existing loan and the status of their application for a loan modification; the statements were made in the course of the Bank’s business and for the Morrows’ guidance; the Bank failed to exercise reasonable care in obtaining the information and was ignorant of the statements’ truth or falsity; and the Morrows did not know of the statements’ falsity and suffered damages due to their justifiable reliance on the statements. Opinion, ¶¶ 47-51, 58-60.
¶87 I believe we have lost sight of the distinction between actual fraud and negligent misrepresentation. Initially, it is important to note that actual fraud may be based on common law or statute. The statutory provision states:
Actual fraud, within the meaning of this part, consists in any of the following acts committed by a party to the contract or with the parly’s connivance with intent to deceive another party to the contract or to induce the other party to enter into the contract: (1) the suggestion as a fact of that which is not true by one who does not believe it to be true; (2) the positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though the person believes it to be true; (3) the *66 suppression of that which is trae by one having knowledge or belief of the fact; (4) a promise made without any intention of performing it; or (5) any other act fitted to deceive.
Section 28-2-405, MCA (emphasis added, paragraph breaks omitted). As reflected in the italicized language, actual fraud involves an “intent to deceive... or to induce” another party. A showing of actual fraud under this statute means that consent to a contract was not given freely and the party is entitled to rescind the contract. See §§ 28-2-102(2), -301(1), -302, -401(l)(c), -404, -405, -1711(1), MCA. Here, however, the Morrows do not seek to rescind a contract. If anything, they seek to enforce one. Hence, the Morrows are not asserting statutory actual fraud. Rather, they assert common law actual fraud.
¶88 The common law definition of actual fraud consists of the nine elements set forth at ¶ 57 of today’s Opinion and in numerous prior cases, such as Franks v. Kindsfather, 2005 MT 51, ¶ 17, 326 Mont. 192, 108 P.3d 487, and Town of Geraldine, ¶ 28. These elements can be traced back through our caselaw to Lee v. Stockmen’s Natl. Bank of Hardin, 63 Mont. 262, 207 P. 623 (1922), where we adopted the definition of actual fraud set forth in Corpus Juris:
In order to go to the jury the plaintiff must make out a prima facie case embracing the elements of actual fraud, viz.: (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker’s knowledge of its falsity, or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer’s ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury. (26 C. J. 1062.)
63 Mont. at 284, 207 P. at 630 (citing 26 C.J. Fraud § 6 (1921)). This rale presently may be found at 37 C. J.S. Fraud § 12 (2008). A showing of actual fraud as a common law tort entitles the person to damages. See e.g. Cartwright v. Eq. Life Assurance Socy. of the U.S., 276 Mont. 1, 22-26, 914 P.2d 976, 990-91 (1996).
¶89 The Court opines that an “intent to deceive or injure” is not required to establish actual fraud. Opinion, ¶ 59 (citing W. Sec. Bank v. Eide Bailly LLP, 2010 MT 291, ¶ 61, 359 Mont. 34, 249 P.3d 35). This is incorrect. As stated in the same authority from which we adopted the nine-element definition of actual fraud, “a fraudulent intent, or an intent to deceive, is an essential element of fraud.” 26 C. J. Fraud § 44 (footnotes omitted); accord 37 C.J.S. Fraud § 4 (“Actual fraud is intentional fraud, with an intent to deceive being an essential *67 element thereof”). Moreover, we have recognized in several cases that common law actual fraud includes an “intent to deceive or dishonesty of purpose.” State ex rel. State Compen. Mut. Ins. Fund v. Berg, 279 Mont. 161, 175-76, 927 P.2d 975, 983 (1996); accord Town of Geraldine, ¶ 28; Barrett v. Holland & Hart, 256 Mont. 101, 107, 845 P.2d 714, 717 (1992) (“intent to misrepresent”); see also e.g. Durbin v. Ross, 276 Mont. 463, 470-71, 916 P.2d 758, 763 (1996) (posing a hypothetical example of actual fraud in which real estate brokers “lied in order to sell a property”).[2] Intent to deceive “means that the party charged [with actual fraud] was inspired by a deliberate, fraudulent purpose to iiyure and deceive the party complaining. Actual fraud implies deceit, artifice, and design, and imports the active operation of the mind.” 37 C. J.S. Fraud § 4 (footnote omitted). This mental state, “consisting in an intent to deceive, manipulate, or defraud,” is known as scienter. Black’s Law Dictionary 1463 (Bryan A. Gamer ed., 9th ed., Thomson Reuters 2009). The scienter requirement is a critical distinction between actual fraud and negligent misrepresentation. Restatement (Second) of Torts § 552 cmt. a (actual fraud involves “intent to deceive,” whereas negligent misrepresentation involves “good faith coupled with negligence”); Falls Sand & Gravel, 270 F. Supp. at 501 (“an action for negligent misrepresentation is quite different from an action for intentional fraudulent and deceitful misrepresentation, since there is no requirement of scienter”); Barrett, 256 Mont. at 107, 845 P.2d at 717 (“Negligent misrepresentation has a lesser standard of proof than [actual] fraud. Rather than requiring an intent to misrepresent, it requires a showing of a failure to use reasonable care or competence in obtaining or communicating the information.”).
¶90 “Because an intent to defraud is generally not susceptible to direct proof, it invariably must be proven by circumstantial evidence.” 37 C.J.S. Fraud § 42. Such intent may be established “by inferences *68 drawn from examining the scheme itself which demonstrate that the scheme was reasonably calculated to deceive persons of ordinary prudence and comprehension.” 37 C.J.S. Fraud § 42. An intent to deceive “cannot be inferred merely from the falsity of a statement,” 26 C.J. Fraud § 44, or from “mere carelessness” by the speaker, 37 C.J.S. Fraud § 42. But it may be inferred where the speaker makes a statement “with knowledge of its falsity,” “in reckless ignorance,” or “in positive terms importing a knowledge of which the speaker is consciously ignorant,” and the speaker intends the statement to “be acted upon by a party reasonably within the contemplation of the speaker.” 26 C.J. Fraud § 44. In other words, intending that a statement be acted upon, while consciously ignorant of whether the statement is true, suggests a fraudulent intent on the part of the speaker.
¶91 The Court posits that knowledge of the statement’s falsity is not required and that “[t]he requisite knowledge may also be established where the defendant is ignorant of whether the statement is true.” Opinion, ¶ 59.1 agree that actual knowledge is not required, but I do not agree that simple ignorance, by itself, is sufficient. Again, the authority from which we adopted the nine-element definition of actual fraud explains that “ignorance of [the representation’s] truth” means that the speaker “doubts the truth of his representations,” speaks “with conscious ignorance or reckless indifference as to their truth or falsity,” or makes “unqualified” assertions that “importt ] a knowledge of which the speaker is consciously ignorant.” 26 C.J. Fraud §§ 37, 39, 40, 44 (footnotes omitted). Similarly, the Restatement sets forth three conditions under which a misrepresentation is fraudulent: “A misrepresentation is fraudulent if the maker (a) knows or believes that the matter is not as he represents it to be, (b) does not have the confidence in the accuracy of his representation that he states or implies, or (c) knows that he does not have the basis for his representation that he states or implies. ’Restatement (Second) of Torts § 526. “The fact that the misrepresentation is one that a [person] of ordinary care and intelligence in the maker’s situation would have recognized as false is not enough to impose liability” for fraudulent misrepresentation (actual fraud). Restatement (Second) of Torts § 526 cmt. d. “Fraudulent” means that the speaker had “knowledge of the untrue character of his representation.” Restatement (Second) of Torts § 526 cmt. a. This does not mean the speaker must have had actual knowledge of the falsity. It is sufficient if the speaker was conscious of a likelihood that the facts may not be as he represented them:
*69 In order that a misrepresentation may be fraudulent it is not necessary that the maker know the matter is not as represented. Indeed, it is not necessary that he should even believe this to be so. It is enough that being conscious that he has neither knowledge nor belief in the existence of the matter he chooses to assert it as a fact. Indeed, since knowledge implies a firm conviction, a misrepresentation of a fact so made as to assert that the maker knows it, is fraudulent if he is conscious that he has merely a belief in its existence and recognizes that there is a chance, more or less great, that the fact may not be as it is represented.
Restatement (Second) of Torts § 526 cmt. e (emphasis added).
¶92 Thus, both the Restatement and Corpus Juris recognize that, at a minimum, a “conscious” ignorance by the speaker about whether his or her statements are true is necessary to establish actual fraud. Without evidence that the defendant at least “recognizetd] that there is a chance, more or less great, that the fact may not be as it is represented,” Restatement (Second) of Torts § 526 cmt. e, it is impossible to infer that the defendant intended to deceive the plaintiff. As discussed, an intent to deceive, manipulate, or defraud is an essential element of actual fraud and is the critical distinction between actual fraud and negligent misrepresentation — the latter involving "good faith coupled with negligence.” Restatement (Second) of Torts § 552 cmt. a. Accordingly, in my view, the Court errs in suggesting that merely being unaware or oblivious about a representation’s truth or falsity is sufficient. Opinion, ¶ 59.
¶93 Here, the Morrows did not expressly allege in their First Amended Complaint that Bank of America had an intent to deceive, manipulate, or defraud them. And, frankly, I question what Bank of America would have hoped to gain from such an effort. It seems to me that what the Morrows’ allegations genuinely reflect is a classic claim of negligent misrepresentation resulting from Bank of America’s left hand not knowing what its right hand was doing. This view finds support in the Court’s footnote referring to the Consent Order, which “notes that Bank of America failed to devote appropriate resources, oversight, and training to its foreclosure processes.” Opinion, ¶ 39 n. 2.
¶94 Nevertheless, the Morrows did allege in their First Amended Complaint that Bank of America “knew” its representations to the Morrows “were false.” The Morrows have presented evidence of a multitude of conflicting communications from the Bank. A jury could infer from the Morrows’ evidence that Bank employees were at least consciously aware that the facts they communicated to the Morrows *70 likely were not as represented. Restatement (Second) of Torts § 526 cmt. e. I thus concur in the Court’s conclusion that the District Court erred in granting summary judgment to Bank of America on the Morrows’ actual fraud claim. I do so, however, with recognition that actual fraud does not contemplate merely making statements about which the speaker is ignorant; it instead contemplates that the speaker had some degree of “knowledge of the untrue character of his representation,” Restatement (Second) of Torts § 526 cmt. a, and “was inspired by a deliberate, fraudulent purpose to injure and deceive” the plaintiff, 37 C. J.S. Fraud § 4.[3]
Issue Six - Constructive Fraud
¶95 As a final matter, I disagree with the Court’s analysis of constructive fraud. Our cases discussing constructive fraud have tied such claims to § 28-2-406, MCA, as the Court does again today. See Opinion, ¶ 62; Harris v. St. Vincent Healthcare, 2013 MT 207, ¶ 30, 371 Mont. 133, 305 P.3d 852; In re Adoption of S.R.T., 2011 MT 219, ¶ 17, 362 Mont. 39, 260 P.3d 177; Lee v. Armstrong, 244 Mont. 289, 294, 798 P.2d 84, 87-88 (1990); McJunkin v. Kaufman & Broad Home Sys., Inc., 229 Mont. 432, 439, 748 P.2d 910, 914-15 (1987). This statute and the other provisions of Title 28, chapter 2, MCA, pertain to contract formation, enforcement, modification, and extinction. Actual fraud under § 28-2-405, MCA, and constructive fraud under § 28-2-406, MCA, are referred to in the Code as “[t]he contract definitions of fraud,” not the tort definitions of fraud. Section 27-1-221(4), MCA (emphasis added). Constructive fraud under § 28-2-406, MCA, is a ground for rescinding a contract. See e.g. Gliko, ¶¶ 31, 36. Here, however, the Morrows do not seek to rescind a contract. If anything, they seek to enforce one. Hence, the Morrows are not asserting constructive fraud under § 28-2-406, MCA. As a matter of fact, they do not cite or make any argument under this statute in their briefs, and the statute thus does not apply. In my view, the Court errs by nevertheless applying § 28-2-406, MCA — a ground for rescinding a contract — when we have determined that the alleged contract (a modified loan agreement) does *71 not exist in the first place. Our reasoning is unsound and will cause confusion in subsequent applications of the statute.
¶96 Perceiving that I have concluded that the Morrows’ constructive fraud claim must fail “because they do not seek to rescind a contract,” the Court cites several cases for the proposition that a plaintiff may seek damages for constructive fraud apart from any action to rescind a contract. Opinion, ¶ 62 (citing Mattingly v. First Bank of Lincoln, 285 Mont. 209, 947 P.2d 66 (1997), Lee, 244 Mont. 289, 798 P.2d 84, and McGregor v. Mommer, 220 Mont. 98, 714 P.2d 536 (1986)). It appears the Court has misapprehended my point. I agree that a plaintiff may seek damages for the tort of constructive fraud (assuming such a tort has been recognized), independent of any contract action. But I disagree that the tort of constructive fraud is defined by a statute (§ 28-2-406, MCA) that undeniably sets forth a “contract definition[ ] of fraud.” Section 27-1-221(4), MCA (emphasis added). The provisions of Title 28 were not intended to create causes of action sounding in tort. Construing statutory language identical to § 28-2-406, MCA, the South Dakota Supreme Court determined that constructive fraud under this statute will support an action to avoid a contract, but not a tort action for damages. Schmidt v. Wildcat Cave, Inc., 261 N.W.2d 114, 116-17 (S.D. 1977); Harding Co. v. Frithiof, 575 F.3d 767, 774 (8th Cir. 2009) (citing Schmidt). Here, the Morrows do not seek to avoid or rescind a contract pursuant to § 28-2-406, MCA. Their constructive fraud claim is intended as a tort claim, not a contract claim, and we err by perpetuating the erroneous use of a contract statute for the purpose of defining the elements of a tort.
¶97 Unlike actual fraud — which is defined for contract purposes in § 28-2-405, MCA, and for tort purposes in our nine-element definition discussed above — this Court has never articulated a common law definition of constructive fraud. I question whether it is necessary to do so, given our determination in Bottrell v. American Bank, 237 Mont. 1, 20-21, 773 P.2d 694, 706 (1989), that constructive fraud and negligent misrepresentation are coextensive when based on the same misrepresentation and the breach of a legal duty.[4] But assuming, for *72 the sake of discussion, that we should adopt a common law cause of action for constructive fraud, whatever else such a claim might entail it would include the requirement (also contained in § 28-2-406, MCA) that the defendant gained an advantage from the alleged fraud. We have explained that “[c]ourts may invoke constructive fraud as a matter of law to prevent a party from being unjustly enriched as a result of false statements made, even if the false statement is not knowingly made.” Durbin, 276 Mont. at 470, 916 P.2d at 762. It is said that “[c]onstructive fraud is a fraud that arises by the operation of law from conduct, which if sanctioned by law, would secure an unconscionable advantage [to the defendant], irrespective of the actual intent to defraud.” 37 C. J.S. Fraud § 5 (footnote omitted); accord 37 Am. Jur. 2d Fraud and Deceit § 33 (2013) (“[T]he primary difference between pleading a claim for constructive fraud and one for breach of fiduciary duty is the constructive fraud requirement that the defendant benefit himself or herself.”).
¶98 Here, I disagree with the Court’s assertion that the Morrows have alleged Bank of America gained an advantage from making misleading statements regarding the status of their loan and their application for modification. Opinion, ¶ 65.1 see no such allegation in the constructive fraud allegations of their First Amended Complaint, in their summary judgment briefing, or in their briefs on appeal. Moreover, aside from failing to allege that Bank of America gained an advantage from the allegedly misleading statements, the Morrows also fail to identify what that supposed advantage was. The Court opines that the Bank gained an advantage because the Morrows made payments to the Bank for an additional 14 months rather than immediately seek another lender or proceed with a short sale or foreclosure. Opinion, ¶ 65. Again, the Morrows made no such allegations. Furthermore, the Morrows had a preexisting contractual obligation to the Bank to make monthly mortgage payments of $2,301.28. The monthly payments the Morrows made during the 14-month period ($1,239.99) were approximately half of what the Bank was entitled to receive under the original mortgage. As the Court concedes, the Bank had no obligation in the first place to avoid foreclosure or to grant a modification of the loan. Opinion, ¶ 39. Thus, it could be argued that the Bank incurred a disadvantage from the Morrows’ reduced payments. In short, there is no evidence, let *73 alone allegations, that the Bank was “unjustly enriched” as a result of conflicting statements about the servicing of the Morrows’ existing loan and the status of their application for a modification. Durbin, 276 Mont. at 470, 916 P.2d at 762. For this reason, I believe the District Court correctly granted summary judgment to Bank of America on the constructive fraud claim, and I dissent from the Court’s contrary holding.
¶99 In conclusion, I dissent as to Issue Six and, except as otherwise stated above, I concur as to all other issues.
JUSTICE RICE joins the Concurrence and Dissent of JUSTICE MCKINNON.

 We noted in Gliko, ¶ 25, that although the existence of genuine issues of material fact is not always easily ascertained, neither conclusory assertions nor mere disagreement about the interpretation of a fact constitutes a genuine issue of material fact.

 Western Security Bank, upon which the Court relies for the contrary proposition (see Opinion, ¶ 59), is not persuasive. There, the Court first faulted the district court for “cit[ing] no authority” for the “intent to injure” standard, and then merely cited to the nine-element definition of actual fraud as authority that “intent to injure” is not required. W. Sec. Bank, ¶¶ 60-62 (citing Durbin, 276 Mont. at 469, 916 P.2d at 762, and May v. ERA Landmark Real Estate of Bozeman, 2000 MT 299, ¶ 21, 302 Mont. 326, 15 P.3d 1179). Neither Western Security Bank nor May, however, contains any in-depth analysis of the nine-element definition. Neither opinion addressed our statements in Berg, Town of Geraldine, and Barrett, or the principles stated in Corpus Juris and the Restatement. Moreover, as just noted, our Durbin opinion includes a discussion that is actually consistent with recognition of an “intent to deceive or injure” standard.

 Although a plaintiff may allege both actual fraud (intent to deceive) and negligent misrepresentation (failure to exercise reasonable care) as to the same course of conduct, the plaintiff “cannot recover wider [both] theories” because “a defendant cannot be found to have committed an act both intentionally and negligently.” Textron Fin. Corp. v. Nationwide Mut. Ins. Co., 684 N.E.2d 1261, 1269 (Ohio App. 9th Dist. 1996). Thus, if the Morrows prevail on their actual fraud claim, their negligent misrepresentation claim becomes moot, and vice versa.

 “Legal duty” in this context refers to a fiduciary relationship or a duty that arises from “special circumstances.” Bottrell, 237 Mont. at 20-21, 773 P.2d at 706. In effect, we held in Bottrell that constructive fraud is subsumed within negligent misrepresentation. We explained that the fields of liability for constructive fraud and for negligent misrepresentation are concentric circles with a common center and differingradii, where the liability in each theory is based on misrepresented facts. The radius of the negligent misrepresentation circle is greater than the radius of the constructive fraud circle *72 because negligent misrepresentation may occur both where there is a breach of a legal duty (like constructive fraud) and where there is merely a failure to exercise reasonable care (unlike constructive fraud). Bottrell, 237 Mont. at 21, 773 P.2d at 706.